INTERNATIONAL & GREAT NORTHERN RAILROAD COMPANY v.
J. J. SAMMON.

Decided March 3, 1904.

**1.—Mental Anguish—Failure to Stop at Flag Station.**
  The failure of the employes on defendant's train to stop at a flag station
when flagged warranted a judgment for damages for personal inconvenience
caused by plaintiff being forced to walk two miles in the dark over rough
roads; but was not ground for recovery of damages for mental anguish
caused by delay in reaching a dying grandchild under circumstances not
known to those who failed to stop on his signal.

**2.—Same—Notice.**
  Notice to the station agent at another place or to the conductor on
another train of the object of a passenger's trip and his intention to return
that night was not notice to the employes of the train which refused to stop
for him when flagged nor to the company.

Appeal from the County Court of Montgomery. Tried below before
Hon. J. T. Rucks.

*N. A. Stedman* and *Gould & Morris,* for appellant.

*Nugent & Foster,* for appellee.

GARRETT, CHIEF JUSTICE.—J. J. Sammon brought suit in the
County Court of Montgomery County against the International & Great
Northern Railroad Company to recover damages for the failure of the
defendant to stop its passenger train for him on the night of December
24, 1902, at Kelly's Switch, a flag station on the line of defendant's
railroad at which the plaintiff was intending to take passage and go to
the town of Conroe, another station on defendant's railroad. The plain-
tiff alleged that as a result of the failure of the defendant to stop the
train he was compelled to walk two miles in the darkness over rough
roads; and that he was delayed sixteen hours in returning to Conroe
where his little grandchild, William Lee Sammon, was dangerously ill
and during said delay died. He further alleged that the illness of said
child and plaintiff's relationship to it were known to the defendant; and
that he suffered damage in the sum of $950, to wit, general damage
$250 and special damage by reason of mental anguish $700. The defend-
ant demurred to the petition generally and specially, and pleaded a
general denial and specially denied that it had any knowledge of plain-
tiff's desire to take the train and the purpose for which he desired to
take it. The cause was submitted to a jury and resulted in a verdict
and judgment for the plaintiff for the sum of $150. The verdict as-
sessed the damages at "$5 general damages for walking and $145 special
damages for mental pain and anguish."

The plaintiff lived at Conroe, where his grandchild, William Lee
Sammon, was very ill. Having been requested by the child's mother to
go to Kelly's Switch after her parents, Mr. Crawford and wife, he went
to the defendant's station at Conroe on the evening of December 23,

1902, to take the train and asked for a ticket to Kelly's Switch, which is about twenty-two miles north of Conroe. The agent told him that he could not sell him a ticket to Kelly's Switch because the next train did not stop there, but suggested that perhaps the conductor would slow up and let him off. The agent knew of the illness of plaintiff's grandchild and the purpose of the trip. He bought a ticket to Waverly, a station several miles from Kelly's Switch, and when aboard the train asked the conductor to let him off at Kelly's Switch, but the conductor told him he was not allowed to stop there and could not and would not do it. Plaintiff got off at Waverly and walked to Crawford's residence, which is about seven miles from Waverly and two and one-half miles from Kelly's Switch. He went to Kelly's Switch about 12 o'clock that night to return to Conroe and flagged the south-bound train, but the train failed to stop and he had to walk back to Crawford's during a dark night and over a muddy road and did not get back to Conroe until the next evening's train, and was delayed sixteen hours, during which time his grandchild died. When he asked the conductor to stop the train and let him off at Kelly's Switch he told the conductor that his grandchild was very sick and that he wanted to get back upon the next train. Kelly's Switch was a flag station at which the regulations of the company required passenger trains to stop when flagged. Plaintiff flagged the train in the customary manner but the signal was disregarded.

The defendant would be responsible for such direct and consequential damages flowing from its failure to stop the train when flagged as were reasonably in the contemplation of the parties, such as the physical suffering alleged in the petition caused by the walk back to Crawford's; and for such other or special damages directly resulting from such failure which, although not otherwise reasonably within the contemplation of the parties at the time, might have been anticipated from the facts within its knowledge, would be the result of its failure to stop the train. The petition alleged that plaintiff's grandchild was dangerously and violently ill at Conroe, which was well known to the defendant as well as the fact of the relationship of the child to plaintiff; and that the defendant through its agents, servants and employes negligently, willfully, unlawfully and wrongfuly refused and neglected to stop said train, or to permit the plaintiff to take passage thereon. This is a pleading of such special facts, to wit, the relationship of the child to the plaintiff and its severe illness, as would entitle the plaintiff to recover for mental anguish for the failure of the defendant to stop its train and take him as a passenger. International & G. N. Ry. Co. v. Anchonda, 68 S. W. Rep., 743; Armstrong v. Ry. Co., 92 Texas, 117; Jones v. Ry. Co., 23 Texas Civ. App., 65, 55 S. W. Rep., 371; Western Union Tel. Co. v. Simpson, 73 Texas, 426; Stuart v. Tel. Co., 66 Texas, 584.

A distinction must be observed between those cases which establish what is called the Texas rule which allows damages for mental anguish

35 Civ—7

on breach of contract and those which deny recovery for mental anguish in cases of tort unaccompanied by physical injury. Among the latter cases may be cited Gulf C. & S. F. Ry. Co. v. Trott, 86 Texas, 413. The cases, however, do not make the distinction very clear. In the failure of the defendant to stop its train for the plaintiff there was a breach of its implied contract and duty as a carrier of passengers, since the plaintiff went to the station intending to become a passenger in accordance with the regulation of the defendant to stop at Kelly's Switch when flagged. The general demurrer to the petition was therefore properly overruled. But the evidence failed to show notice to the defendant of the facts that would render it liable. The knowledge of the agent at Conroe or of the conductor on the north-bound train that the child was sick and that it was the purpose of the plaintiff to go to Kelly's Switch for its mother's parents and return the same night was not notice to the defendant of such purpose. The facts were not communicated to either of said employes in the making of a contract of carriage or in connection with the performance of any duty by them. The agent at Conroe refused to sell a ticket to Kelly's Switch and there was no understanding or agreement in the sale of the ticket to Waverly other than that the plaintiff would be carried to Waverly. Missouri K. & T. Ry. Co. v. Belcher, 88 Texas, 549. The court erred in charging the jury that notice to the agent of the defendant company was notice to the company. No cause of action was shown except for the damages resulting from the walk back to Crawford's. It is unnecessary to pass on the remaining assignments of error. The judgment of the court below will be reversed and judgment will be here rendered in favor of the plaintiff for the sum of $5 and all costs except the costs of this appeal, which are adjudged in favor of the defendant.

*Reversed and rendered.*