## Gulf, Colorado & Santa Fe Railway Company v. Jackson & Edwards.

### No. 1478.     Decided November 24, 1905.

**1.—Railway—Cattle Shipment—Authority of Agent.**

A railway agent authorized to contract for the shipment of freight is thereby held out as having authority to contract with reference to all the ordinary and necessary details of such business, but, unless authorized, has no implied power beyond that, as to make a contract to carry beyond the company's line, or to stipulate for delivery beyond its line within a time certain; nor has he any implied power to contract for transportation in a solid train unmixed with other freight, or in trains drawn by a single engine, such matters being under the control of other departments of the service. (Pp. 346–348.)

**2.—Cattle Shipment—Damages—Evidence.**

Where plaintiff, claiming damages for injury to his cattle in transportation, testified as to the difference between their value uninjured and their value as injured, at the point of destination, but showed no knowledge of their market value there except as derived from the estimate of commission men who loaned money on them, it was error to exclude cross-examination of the witness as to the price paid for the cattle at the point of origin of the shipment and the cost of shipping them to destination. (Pp. 348, 349.)

**3.—Evidence—Value.**

Testimony of a witness as to market value of cattle at a certain time and place derived only from statements of others in answer to his inquiries in the neighborhood a month or two later was properly excluded. (P. 349.)

Error to the Court of Civil Appeals for the Third District, in an appeal from Lampasas County.

Jackson & Edwards sued the railway and recovered judgment. Defendant appealed and on affirmance obtained writ of error.

*J. W. Terry, Matthews & Browning* and *Chas. K. Lee,* for plaintiffs in error.—A railroad company is not forced to hold itself out to do business or bind itself beyond its own lines. Accordingly, it is well settled that there is no implied authority on the part of agents of railroad companies to bind them beyond the lines of their own road, nor is there any implied authority on the part of a local station agent to enter into contracts of unusual and extraordinary character. Missouri, K. & T. Ry. Co. v. Faulkner, 88 Texas, 649; Missouri, K. & T. Ry. Co. v. Belcher, 32 S. W. Rep., 518; Gulf, C. & S. F. Ry. Co. v. Hodge, 30 S. W. Rep., 829; Gulf, C. & S. F. Ry. Co. v. Dinwiddie, 51 S. W. 353; Crouch

v. L. & N. Ry. Co., 42 Mo. App., 248; Grover v. R. R. Co., 70 Mo., 672;
35 Am. Rep., 444; Turner v. St. L. & S. F. Ry. Co., 20 Mo. App.,
632; Waite v. A. & T. R. R. Co., 5 Lans., 475; American Railroad Law,
p. 367; Hale on Bailments and Carriers, Hornbook series, p. 470; Sut-
ton v. C. & N. W. Ry. Co., 84 N. W., 396; Missouri Pac. Ry. Co. v.
Carpenter (Kan.), 24 Pac., 462; Weikle v. Railway (Minn.), 63 N. W.,
963; Burroughs v. Railway, 100 Mass., 26; Louisville & N. Ry. Co. v.
Bennett, 76 S. W., 409.

The witness, Jackson, testified to his estimate of the value of the cat-
tle in the territory at the time they arrived there, and what it would
have been at the time they should have arrived there. As bearing on
the weight to be given his estimate, and as a circumstance going to show
what was the real market value of the cattle, particularly as the testi-
mony showed and tended to show the market value of the cattle in the
territory depended upon what the cattle could be gotten for in the sup-
ply market in such sections as that around Lampasas, it was legitimate
and admissible testimony to show what these plaintiffs paid for their
cattle. Houston Cotton Oil Co. v. Trammell, 7 Texas Ct. Rep., 641;
Herrin v. Patton, 44 S. W. Rep., 50; Chicago, R. I. & P. Ry. Co. v. Car-
roll, 10 Texas Ct. Rep., 775; Jones on Evidence, vol. 3, sec. 826; Wills v.
Kelsey, 37 N. Y., 145; L. C. P. ed., 277, 278; New York, L. E. & W.
Ry. Co. v. Estill, 147 U. S., L. C. P., 304; Dittman v. Wyse, 31 S. W.,
68; Reeves v. Texas & P. Ry. Co., 32 S. W. Rep., 20; Jacksonville Ry. v.
James, 15 So., 924; Eaton v. Mellus, 73 Mass. (7 Gray), 566; Alabama
& V. Ry. Co. v. Seales, 71 Miss., 744; 16 So., 225; Whipple v. Walpole,
10 N. H., 130; Ferguson v. Clifford, 37 N. H., 86; Bird v. Everhard
(Com. Pl.), 4 Misc. Rep., 104; 23 N. Y. Sup., 1008; Memphis v. Kim-
brough, 59 Tenn. (12 Hisk.), 133.

Plaintiffs having developed from defendant's witness, Charles, what he
and Gravitt paid for the cattle he bought, and these prices being greatly
less than the value placed by the plaintiffs on their cattle, defendant
was entitled to show that the cattle were worth more in May than they
were in March and April, as showing:

(a) That the price Gravitt paid would have been still less if he had
bought about the time the plaintiffs did.

(b) That the lower value of the cattle was not due to any fall in
the market; and

(c) That the plaintiffs' estimates of the value of their cattle were
therefore grossly excessive.

*Walter Acker,* for defendants in error.—A railroad company may be
bound by contract made by its agent, acting within the scope of his
authority, or within the apparent scope of his authority, to carry freight
beyond its own line; and J. I. Conway being held out and presented
by defendant to the public as its live stock agent with authority to
solicit and obtain shipment of live stock over its road, such contract was
as much, or more, within the apparent scope of his authority, than it
would have been within the apparent scope of the authority of a local
agent of defendant, and if it had been made by such agent, defendant
would have been bound. Railway v. Nicholson, 61 Texas, 495; Railway

v. Hume, 27 S. W. Rep., 110; Railway v. Carter, 29 S. W. Rep., 570; Railway v. Williams, 57 S. W. Rep., 883; Railway v. Leatherwood, 69 S. W. Rep., 111; Railway v. Pratt, 22 Wall, U. S., Book 22, L. R., 827; Railway v. Jury, 111 U. S., L. R., 527; Railway v. Halsell, 81 S. W. Rep., 1241.

The court did not err in refusing to allow the defendant to interrogate the plaintiff, Jackson, as to what he had paid for the cattle, because such testimony was wholly immaterial and irrelevant. The measure of damages being based on the market value of the cattle at their destination, it could make no difference whether the cattle were given to plaintiffs, whether they bought them, or raised them at Lampasas. Railway v. Hume, 27 S. W. Rep., 110; Railway v. Williams, 31 S. W. Rep., 557; Railway v. Haughton, 68 S. W. Rep., 718.

The court did not err in refusing to allow the defendant to show by the witness, Gravitt, that by inquiry from the people of whom he purchased and in the market at Lampasas and vicinity while there buying cattle, he ascertained what the cattle of the grade and kind of plaintiffs' had been worth in March and April, 1902; because: (1) Such testimony would have been hearsay evidence; (2) It appears from the bill of exceptions that the inquiries were from the people to Gravitt, who lived in the Indian Territory; (3) The worth of cattle at Lampasas had nothing to do with the measure of damages in this case. Same authorities and Houston C. O. Co. v. Trammell, 72 S. W. Rep., 256.

BROWN, Associate Justice.—Jackson and Edwards sued the railroad company to recover damages for breach of a contract in the shipment of cattle from Lampasas to Halls and Sapulpa, Indian Territory. Upon trial the jury returned a verdict for $4,000 damages. From the statement made by the Court of Civil Appeals we condense the following as the facts found by that court:

On the 1st day of March, 1902, J. I. Conway was the livestock agent of the Gulf, Colorado & Santa Fe Railway Company, and, as such, on that day entered into a parol agreement with Jackson and Edwards whereby it was agreed that the Gulf, Colorado & Santa Fe Railway Company should furnish at Lampasas, Texas, at the request of the shippers, sufficient cars to ship about three thousand head of cattle from Lampasas to Halls and Sapulpa, Indian Territory. It was agreed that the cattle should be shipped in special solid stock trains unmixed with other cars or freight, and that each train should be drawn by a single engine—not to be run as a double-header train—and should make the trip in twenty-seven hours. Plaintiffs were the owners of about 2,053 head of the cattle, the remainder being the property of other persons. About the 11th day of April, of that year, the shippers directed that the railroad company should furnish them cars sufficient to ship about 2,300 head of cattle, and, on the 15th day of April, the railroad company sent to Lampasas two trains of thirty-five cars each, each train being drawn by two engines. The cars were not bedded nor prepared for loading which caused some delay at Lampasas. The shippers protested against the use of the double-header trains, insisting on the use of one engine for each train, but the railroad company

persisted in using the double-header trains.  The local agent at Lampasas knew the terms of the parol contract between Conway and the shippers, received the cattle and loaded them on the cars, knowing that they were being shipped under that agreement.  After the cattle were loaded the agent presented to the shippers thirty contracts for their signatures, each of which contained the stipulation that each carrier mentioned in the contract limited its liability to its own line, the contract being otherwise in the usual form of such contracts of shipment. Jackson and Edwards objected to signing the contracts and insisted that they were shipping under the contract made with Conway, but the agent informed them that unless they signed the contracts the cattle would not be shipped, after which they signed the contracts and accepted them as parts of the parol contract and for the purpose of securing the carriage on the freight trains of themselves and their men in charge of the cattle.  On the way the railroad company attached other cars to each train thereby causing delay and rough handling of the cattle; the second train was forty-two hours in making the trip and the cattle arrived at Halls in the night and were turned loose in the open country because there were no pens in which to place them, whereby they were injured to the amount of the verdict.  Conway, as live stock agent of the railroad company, had authority to make contracts for the shipment of cattle over any part of its line, and had such authority as was usually vested in the local agent of the railroad company at a station.

The principal question of law that is involved in this case is whether, under the facts found by the Court of Civil Appeals, Conway, the soliciting agent of the plaintiff in error, or Curtis, the station agent at Lampasas, had authority to make the parol contract claimed by the defendants in error.  If Conway made the parol contract by authority, it matters not whether Curtis had authority or not, and if Curtis had the authority to make the contract and Conway had not, the contract would be binding under the facts found, for when Curtis, knowing of the contract and its terms, received the cattle for shipment under the parol agreement without objection, that contract became binding upon the company by reason of the authority of Curtis to make it.  The Court of Civil Appeals found that Conway had all the authority that a station agent had, and accepting that as a finding of fact, we can solve the legal question by ascertaining what authority Curtis had.

The same rule of law applies to agents of railroad companies as to agents of natural persons, which, applied to the facts of this case, is well expressed in the following extract:  "Where a railroad company places an agent in charge of its business at a station, and empowers him to contract for the shipment of freight, it holds him out to the public as having the authority to contract with reference to all the necessary and ordinary details of the business, and, within the range of such business he becomes a general agent."  (5 Am. & Eng. Ency. Law, sec. 13, p. 351.)  Consistently with that general rule this court has held that the local agent of a railroad company having the power to contract for the shipment of cattle, has also authority to agree with the shipper upon a time at which the cars necessary for that shipment shall be furnished.  (McCarty v. Railroad Co., 79 Texas, 37; Railway

Co. v. Hume, 87 Texas, 219). These cases rest upon the well recognized rule of law that by conferring upon an agent express power to do certain acts, the authority is implied to do whatever may be necessary to execute the express power. It is held in the cases referred to that the authority to contract for the shipment implied the power to make the agreement to furnish cars at a given time; it was necessary to enable the agent to properly perform his duties. But it has also been held that the local agent of a railroad company has no authority to contract for the furnishing of cars at a station other than his own nor to make any contract which will bind the company with reference to freight to be received at a different station. (Railway Co. v. Dinwiddie, 21 Civ. App., 344; Railway Co. v. Belcher, 88 Texas, 549.) The cases last cited show that the authority of Curtis did not extend to the performance of any act for which he had not express authority, unless it was a thing necessary for him to do in the execution of the powers expressly given. It is a general rule of law, supported by the weight of authority and by sound reasoning, that in the absence of an agreement or course of business to the contrary, the initial carrier is bound only to safely carry and deliver to the next carrier. (Railway Co. v. M'f'g Co., 16 Wall., 324; Railway Co. v. Pratt, 22 Wall., 124.) It logically follows that a local freight agent of a railroad company ordinarily has no authority to bind the corporation to carry freight beyond its line. (5 Am. & Eng. Ency. Law, p. 352, and cases cited in note 3). It therefore follows that the contract which is claimed to have been made to carry the freight beyond the line of the plaintiff in error was without authority, unless it shall be shown that the railroad company has engaged in carrying freight beyond its line, in which event the power might be implied from the course of business, since the local agent would be authorized to contract for the performance of those things usually done by the company. But no fact is found by the Court of Civil Appeals, nor is any evidence pointed out by counsel for defendants in error, which tends to show such a course of business.

The stipulation in the contract for delivery at a certain time necessarily involved the performance of it beyond the line of the plaintiff in error and was therefore unauthorized upon the facts which are before us, whether made by Conway or by the local agent. It is not necessary for us to determine in this case whether the local agent might not have contracted for the delivery of the freight upon the line of the plaintiff in error at a given time. The authorities are in conflict upon that question and we do not find it necessary to express an opinion upon it.

The provision of the contract that the cattle were to be shipped in solid trains without mixing other freight with them, and also that each train should be drawn by a single engine, must be held to be unauthorized and not binding upon the railroad company for the same reasons which deny to the local agent the authority to contract to furnish cars at another station. The character of the trains which were to be run in the transportation of those cattle and the number of engines to be used were matters under the charge and control of entirely different departments from that in which Conway or the local agent of the railroad company was engaged. It was not necessary, to enable either Conway

or Curtis to execute the power of receiving and shipping the cattle, that those cars should be hauled in solid trains without other cars; nor was it necessary to the performance of this duty that the number of engines to be used should be restricted as was done by the contract. These subjects were as much beyond the authority of the local agent at Lampasas as it would have been to contract for the delivery of cars upon the said line of railroad at Temple, and, by the same reasoning upon which our decisions rest which limit the authority of the local agent to his own station, his authority must be limited to his department of service.

The conclusion that we have reached results in a reversal of the judgment and remanding the case for another trial.

There are many assignments of error upon other questions embraced in the application of 186 printed pages and we do not feel called upon to discuss those questions in detail, but there are some assignments of error that we think should be examined and discussed in view of another trial.

As the measure of their damages, plaintiffs claim the difference between what the cattle in their damaged condition would have sold for at Halls and the sum they would have brought if they had been transported with ordinary care and reasonable dispatch. Plaintiff, Jackson, being on the stand in behalf of plaintiffs testified to what the cattle would have been worth on the market at Halls if delivered in good condition and what they were worth in the condition in which they were delivered. He stated in substance that he had not known of any cattle being sold at Halls or in that vicinity during the season except some of the same herd that he sold subsequently, and that he formed his opinion of the market value of the cattle at Halls from the estimate of value which the commission men placed upon cattle for the purpose of determining the amount to be loaned on them. After he had thus testified, the defendant upon cross-examination asked in substance what he had paid for the cattle when he purchased them in Texas, and the cost of shipping them to Halls, to which the plaintiffs' counsel objected on the ground that the proposed evidence was immaterial. The court sustained the objection, and the defendant has presented assignments which challenge the correctness of that ruling. "In order to establish the market value at the place of delivery it was necessary that the evidence should show that cattle of like quality had been bought and sold at that place during the season in sufficient quantity and often enough to show a market value." 2 Suth. on Damages, p. 1213; Pacific Express Co. v. Lothrop, 49 S. W., 898. The testimony of Jackson not only failed to establish a market value for such cattle at Halls at the time they arrived there, but, in fact, showed that his estimate was not based upon any such value but upon the opinions of men who were not engaged in buying, but in lending money upon cattle. The rules of law for ascertaining damages are not inflexible, but the circumstances of each case must control. "What is required is that reliable and satisfactory evidence shall be produced from which the value of the property in controversy may be ascertained with a reasonable degree of certainty." 3 Sedg., p. 620. The evidence excluded fills the requirements of that rule and was peculiarly applicable in this case and would have furnished

a test of the correctness of Jackson's estimate of the value of the cattle. The court erred in excluding the evidence.

The defendant offered to prove by witness, Gravitt, that in May, 1902, something like a month after the shipment of these cattle from Lampasas, the witness was in the country near Lampasas from which the plaintiffs had purchased their cattle, and, by inquiry of cattle raisers in that section of the country, he learned what the value of cattle was in that vicinity in March and April, and that the price had not advanced from that time to the time when the witness was making the inquiry. The defendant then proposed to prove by the witness the values of cattle so ascertained, to which counsel for plaintiffs objected, because it was hearsay, and the court sustained the objection, in which we think there was no error.

There are a number of assignments which we do not discuss because under the conclusion reached, there is little probability that the same questions will arise at a subsequent trial. For the errors specified in this opinion, the judgments of the district court and Court of Civil Appeals are reversed and the cause is remanded.

*Reversed and remanded.*