SAN ANTONIO & ARANSAS PASS RAILWAY COMPANY v. H. J. TIMON.

Decided January 16, 1907.

**1.—Contract to Furnish Cars—Evidence.**

Where a railroad station agent, in reply to a notice or statement by a shipper that he wanted a certain number of cars on a certain day in which to ship cattle, answered "all right," it constituted a contract to furnish the cars wanted at the time named.

**2.—Same—Authority of Agent.**

The local agent of a railroad company having authority to contract for the shipment of cattle has authority also to contract that the cars shall be furnished on a certain day. This authority in such agents is absolutely necessary to the proper discharge of their duties to the public.

**3.—Same—Same.**

The fact that a shipper knew at the time the agent agreed to furnish cars on a certain day, that he, the shipper, would be required later, and before the shipment went out, to sign a contract which would probably contain a denial of the agent's authority to contract to furnish cars at any specified time, would not, as matter of law, destroy the oral contract to furnish the cars at the time specified.

**4.—Impeaching Written Contract—Pleading.**

In the absence of allegations of fraud, accident or mistake in the execution of a shipping contract it was error to admit testimony which tended to impeach said contract.

**5.—Shipment of Cattle—Damages—Pleading and Evidence.**

Where, in a suit for damages to a shipment of cattle, plaintiff claimed only such damages as accrued before the cattle were loaded, it was error to admit evidence of injuries in transit.

Appeal from the District Court of Bee County. Tried below before Hon. James C. Wilson.

*Proctors, Vandenberge & Crain,* for appellant.—Where a person knows, or from the course of dealing should know of the lack of authority on the part of an agent to make a certain character of contract the principal of such agent is not bound by such contract made by such person with such agent. Texas Mexican Ry. v. Gallagher, 70 S. W. Rep., 97; Ft. Worth & D. C. Ry. v. Wright, 24 Texas Civ. App., 292; San Antonio & A. P. Ry. v. Williams, 57 S. W. Rep., 883;

Galveston, H. & S. A. Ry. v. Allen, 15 Texas Ct. Rep., 966; Tres Palacios R. & I. Co. v. Eidman, 14 Texas Ct. Rep., 854.

No briefs for appellee.

FLY, ASSOCIATE JUSTICE.—Appellee sued appellant to recover damages to certain cattle alleged to have accrued by reason of the failure of appellant to furnish cars at Skidmore in which to transport the cattle to East St. Louis, Illinois, in compliance with an oral contract. The trial resulted in a verdict and judgment for appellee in the sum of eight hundred dollars.

There can be no doubt that an agreement was made by the agent of appellant to furnish the cars. Russek, who contracted for the cars for appellee, stated he told the agent that appellee wanted ten or twelve cars, not less than ten, in which to ship cattle on June 12, giving the number of cattle and point of destination, and the agent answered "all right." That was an oral contract to furnish the cars at a certain date.

It is too well settled now to require further discussion that a local agent having the power to contract for the shipment of cattle, has also authority to agree with the shipper upon a time at which the cars necessary for that shipment shall be furnished. Easton v. Dudley, 78 Texas, 236; McCarty v. Gulf, C. & S. F. Ry. Co., 79 Texas, 37; Gulf, C. & S. F. Ry. v. Hume, 87 Texas, 211; Gulf, C. & S. F. Ry. v. Jackson, 99 Texas, 343; Gulf, C. & S. F. Ry. v. Irvine (Texas Civ. App.), 73 S. W. Rep., 540.

The fact that appellee knew that he would be required to sign a written contract before the cattle were shipped, would not, as a matter of law, destroy the oral contract for the cars at a certain time, even though appellee may have known that the written contract would probably contain a negation to the agent of the "power or authority to agree to furnish cars to be loaded with live stock at any specified time." In order to properly perform their duties to the public it is absolutely necessary that the agents of a railway company should have the authority to contract for furnishing cars on a certain date, especially in the shipment of cattle. It would be absurd to hold that shippers of cattle could not notify agents of dates on which they desired to ship and have them agree to have the cars ready, but that the shipper must carry his cattle to the station and hold them until the railroad company sees proper to furnish the cars. As said in Easton v. Dudley, herein cited: "There must be a contract as to the time when the freight will be received, otherwise a shipper would never know when to deliver such freight as could be received only on the cars. Such contracts are made daily, and must be made by some one. The question is, who is to make the contract for the company? Naturally, the station agent. He is there to represent the company, and does represent it, otherwise the shipper would be compelled to find some general officer clothed with the necessary power, who in most cases would be many miles away from the station. It is the duty of the company to have some one on the ground to represent it in this respect. It can not be expected that the company should have a general officer at each station for this

purpose—this would be oppressive; and it would be equally oppressive upon the shipper to require him to make such contracts as must be made with some general officer of the company. The time when the cars are to be ready is of the utmost importance in the shipment of many articles, especially live stock. Such business must of necessity be transacted by the company's agent, and in fact is so done because it is a necessity. If the agent can contract to receive freight, he can contract as to the time when he will receive and as to every other undertaking necessary to that end." This general principle is admitted, but it is the contention that as appellee had shipped cattle under written contracts in which such authority was denied that he knew the agent had no authority to promise cars at a certain time, and therefore knew the invalidity of his contract. He knew that it was the way, however, in which appellant did its business, and that it necessarily from time to time ratified such contracts. In the very nature of things the agent was necessarily empowered to make such contracts in order to accomplish the ends for which he was appointed, which was to contract for the shipment of freight. The stipulation in the printed forms which appellee had at various times signed in former shipments could not constitute notice to him that the agent had no power to do things which were absolutely necessary for him to do in performance of the duties for which he was appointed. There is not one word in the testimony that tends to show that the railroad company did not recognize the authority of its agents in agreeing to furnish cars on a certain date; and on the other hand the testimony tends to show that it was done in the ordinary course of business. That a denial of such power in the agent might possibly be in a written contract that appellee would probably be required to sign after the cattle were loaded would not be notice to him of the agent's lack of authority to make such a contract. Any reasonable man would naturally suppose that a railroad agent would have the authority almost essential in order for him to accomplish the purposes of his agency. Appellee pertinently swore: "I didn't know this railway agent at Skidmore did not have authority to make any such contract; I supposed he had authority to ship the cattle, or they wouldn't have one. I supposed the railway agent had authority to order the cars."

It is not claimed that sufficient time was not given in which to furnish the cars, but merely that the agent had no authority to make the contract. We are unwilling to hold under the evidence, that the jury was not justified in finding that appellee knew that the agent did not have the authority to agree to furnish cars at a certain time. The issue was fairly submitted to the jury and decided against appellant.

In the absence of any notice, except what may have been contained in former contracts, we are inclined to hold that appellant was bound by the contracts to have sufficient cars at Skidmore on June 12, 1904, to transport the cattle of appellee, and that the railroad company can not deny the authority of the agent to contract for the performance of a legal duty on its part. There might be circumstances that would excuse a breach of the contract, but nothing of the sort is claimed in this case. If appellee had merely notified appellant's agent that he

would have 250 head of cattle at the station on a certain date for shipment, an implied contract to have the cars there on that date would arise. As was said by the Court of Appeals of Kentucky in Newport News & M. V. Ry. v. Mercer, 29 S. W. Rep., 301, "it was the duty of defendant, as a common carrier, independent of statutory obligation, to provide reasonable facilities and appliances to transport, when requested, such goods as it held itself out ready to carry; the law implies an agreement to furnish necessary cars on a particular day when a request has been in due time made by the shippers of a station agent, who for that purpose has the authority of a general agent."

In the case of Gulf, C. & S. F. Ry. v. Jackson, 99 Texas, 343, is the latest enunciation of the rules by the Supreme Court of Texas, applicable in cases of this character. After citing other Texas cases on the subject the court says: "These cases rest upon the well recognized rule of law that, by conferring upon an agent express power to do certain acts, the authority is implied to do whatever may be necessary to execute the express power. It is held in the cases referred to that the authority to contract for the shipment implied the power to make the agreement to furnish cars at a given time. It was necessary to enable the agent to properly perform his duties." To hold that the denial, in the printed forms of shipping contracts, to the agent of authority to contract for cars at a specified time, deprives him of such authority, is to hold that the powers necessary to carry out his agency have been utterly destroyed by such stipulation. As said in Easton v. Dudley, herein cited: "Some person must be at shipping stations to give information, to contract with reference to the shipping of freight, and why not as to the time when the cars will be furnished as well as any other matter relating to the business? Why except the time when the freight will be received and the cars furnished, when other incidents of the shipment not more important are subjects of contract by the agent?" The language of those cases is broad enough to cover every case whether notice was given of the lack of authority in the agent to contract for cars on a certain date, or not. We are inclined to the opinion that a principal can not deprive an agent of the authority to do things necessary for the purposes of his agency. Such a course would virtually destroy the agency. The railroad companies must, in the very nature of things, have agents, and those agents must have the authority to do those things necessary to accomplish the designs of the agency.

In the case of Texas Mexican Ry. v. Gallagher, 70 S. W. Rep., 97, decided by this court, there are expressions, perhaps, in conflict with the rules herein enunciated, but in that case the point to be decided was, whether or not a verbal contract to transport to St. Louis, from San Diego, Texas, was valid when the shipper had afterward signed a written contract in which the liability of the initial carrier was confined to its own line, the shipper knowing at the time he made the verbal contract that the railroad company invariably required the signing of the written contract in which its liability was restricted. That was a matter about which it was not necessary for the agent to make a verbal agreement; one which would deprive his employer of a valuable right. The shipper knew he had no right to make it, and that no such contracts were ever ratified by the railway company. Under the facts

of that case the opinion was right, and must be confined to those facts. In this case, the agent did not in his contract deprive the railway company of any legal right, but merely agreed to do what the law enjoined on his employer to do.

There was not, as stated in the third assignment of error, any rules or customs of appellant prohibiting the agent from agreeing to furnish cars at a specified time. It may be inferred from the course of dealing in cattle shipments that the agent did what was usual and customary.

It can not be held as a matter of law that appellee's knowledge of what was in former contracts was notice to him of what would be in the next contract he would sign. There had been instances when he had not been required to sign such written contracts.

There is no merit whatever in the eighth and ninth assignments of error, which complain of the admission of evidence about the cattle being held from day to day near the station at the instance of the railway agent. These assignments, as well as others, are encumbered with numerous reasons and arguments that have no place in an assignment of error and tend to obscure rather than elucidate the point intended to be made. The simple proposition evolved out of the mass of evidence and arguments contained in the assignments is that it is error to hear evidence on issues not raised by the pleadings. There was no effort to recover on a different contract from that alleged, and the testimony of Russek was directly in response to the allegations and was properly admitted.

There was no allegation of fraud, duress or mistake in connection with the written contract signed by appellee, and the court erred in permitting appellee to testify to circumstances which could have no other tendency than to impeach the written contract. We therefore sustain the eleventh assignment of error.

There is no error in the charge complained of in the thirteenth assignment of error. It was not on the weight of the evidence, and did not assume proof of any facts.

The petition clearly alleges the verbal promise "to accept said cattle for such transportation and shipment, and for the consideration and reward above mentioned, agreed to and with plaintiff, that on or about June 12, 1904, defendant would have the necessary ten cars at Skidmore, Texas, when it would accept said cattle, and forward and transport same to East St. Louis, Illinois, for plaintiff, and instructed this plaintiff to have said cattle gathered and under herd at said time." That allegation was sufficient for the introduction of evidence to show that the cars were not furnished as appellant had promised. The statement of appellee that he ordered the cars through Russek was not hearsay. There was no controversy on the point of the order being made or a failure to furnish the cars.

Appellant only claimed damages accruing to the cattle before they were put in the cars, and all testimony in regard to the treatment of the cattle along the route to East St. Louis should have been excluded. The injuries received on the journey should not have entered into the contemplation of the jury in fixing the damages, and, although the court may have instructed the jury to consider nothing but the injuries inflicted before the cattle left Skidmore, the evidence

was confusing and may have, to a certain extent, influenced the verdict of the jury.

The only grounds of damage submitted to the jury by the court, under an agreement by appellee to that effect, was· his damage by loss of flesh of the cattle at Skidmore by their detention, and decrease in value of the cattle by their failure to reach their destination by a certain time. If the cattle lost flesh by the delay at Skidmore, appellee should recover all losses sustained by that detention, and if the market price was higher at the time when the cattle should have reached their destination than it was when the cattle did reach that point, appellee should recover that difference in the market prices. It follows that the court did not err in allowing appellee to prove the market prices on such dates.

The question of appellee's knowledge of the agent's lack of authority to contract as he did was fully submitted to the jury and the court did not err in refusing the various special charges on the subject requested by appellant.

The court did not err in instructing the jury that to constitute a contract the minds of the parties must meet as to all the terms and considerations of the contract.

The court did not err in submitting the issue as to whether the agent had the authority to make the verbal contract, or as to whether appellee knew of such lack of authority.

None of the criticisms of the charge can be sustained. In view of a reversal of the judgment the question of excess in the verdict need not be considered. The judgment is reversed and the cause remanded.

*Reversed and remanded.*