**WHITLEY v. GULF, C. & S. F. RY. CO.**
(No. 55.)

(Court of Civil Appeals of Texas. Beaumont. Feb. 3, 1916. Rehearing Denied Feb. 24, 1916.)

1. CARRIERS ⊕69 — CARRIAGE OF FREIGHT — CONVERSION—EVIDENCE.

In an action against a carrier for conversion, where the testimony of the station agent at the point to which the consignee desired to have the goods reshipped that he had authority to arrange for such reshipment was not contradicted, a finding that an agreement with him for such reshipment was not binding was error.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 217–219, 222, 228, 230, 232–239; Dec. Dig. ⊕69.]

2. CARRIERS ⊕94 — CARRIAGE OF FREIGHT — CONVERSION—DAMAGES.

In determining damages for the conversion of freight by a carrier, secondhand household fixtures are regarded as having no recognized or fixed market value, but the court should consider the original cost of the property, the manner in which it has been used, its general condition and quality, its age, etc.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 367–395, 456; Dec. Dig. ⊕94.]

3. EVIDENCE ⊕67—PRESUMPTION—CONTINUANCE OF CONDITION.

In an action against a carrier for the conversion of freight, evidence as to the condition and value of the property when it was stored with a furniture company four months before shipment and eight months before the conversion, and that the goods were so well crated and packed that the carrier waived its usual rule requiring payment of freight in advance, is sufficient to raise the presumption that the value continued the same at the time of conversion as at the time of storage.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 87, 88, 103; Dec. Dig. ⊕67.]

---

⊕For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**4. APPEAL AND ERROR ☞1008 — REVIEW — FINDING OF COURT.**

In an action against a carrier for conversion, where the trial court found that both parties agreed that the carrier had the right to sell the goods at public auction unless an agreement had been entered into barring the right, an assignment of error that the carrier did not have such right will not be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3955–3960, 3962–3969; Dec. Dig. ☞1008.]

Appeal from District Court, Jefferson County; W. H. Davidson, Judge.

Action by W. W. Whitley against the Gulf, Colorado & Santa Fé Railway Company. From a judgment for defendant, plaintiff appeals. Reversed and remanded for new trial.

W. R. Blain, of Beaumont, for appellant. F. J. & C. T. Duff, of Beaumont, for appellee.

CONLEY, C. J. On the 26th of October, 1913, the appellant, plaintiff in the court below, filed suit against the Gulf, Colorado & Santa Fé Ry. Co., alleging that on or about the 30th day of August, 1912, there were shipped from Palestine, Tex., a lot of household goods and furniture, consigned to shipper's order, with instructions to notify plaintiff, who was the owner of said goods, and that said goods arrived in Beaumont over the lines of the defendant corporation, and remained at its warehouse in Beaumont up to the 21st day of December, 1912, when they were by the defendant company unlawfully converted to its own use, to plaintiff's damage in the sum of $1,750.

The defendant railroad company answered, admitting that the goods were shipped from Palestine, as alleged by plaintiff, and in defense to plaintiff's suit pleaded that the goods, after having arrived in Beaumont on or about the 10th day of September, 1912, remained unclaimed in its warehouse until the 21st day of December, 1912, when they were shipped to Galveston to be sold at public auction at what is commonly called the "old hoss sale"; that after the arrival of said goods in Beaumont the defendant on various occasions mailed notices to plaintiff of the arrival of the said freight, and that said notices were received by the plaintiff; that after said goods arrived in Galveston they were duly advertised, as required by law, and in May, 1912, were sold to various parties, who were the highest bidders at the sale; that the total sum realized for said goods at said sale was $109.10; that the freight and storage charges on the goods amounted to $25.45; that the sale was made for the purpose of defraying said charges; and that there was a balance in the hands of the defendant due plaintiff from said sale of $83.65, which sum was tendered into court.

In reply to defendant's plea the plaintiff filed his supplemental petition, denying that he received any notice of the arrival of said freight in Beaumont, and alleging that, if the sale took place in Galveston, as claimed by defendant, said sale was unauthorized, by reason of the fact that on the 5th day of January, 1913, inquiry was made by plaintiff of the defendant's agent at Beaumont, the point to which said goods were shipped, as to the arrival and disposition of said goods, and that on the 6th day of January, 1913, W. O. So Relle, the plaintiff's agent at Beaumont, notified plaintiff that said goods had been received by the defendant at its freight warehouse in Beaumont, and, because of the nondelivery thereof, had been shipped, on December 21, 1912, to the unclaimed freighthouse at Galveston, and instructed and advised plaintiff that, if he would take the matter up with the defendant's agent at Saratoga, to which point plaintiff wished to have said goods reshipped by defendant, he, the said agent at Saratoga, would be able to have plaintiff's goods returned to him at Saratoga, and that in accordance with the instructions given him by the defendant's agent, W. O. So Relle, plaintiff did call upon the defendant's agent at Saratoga, and requested and directed him to have said goods reshipped to plaintiff at Saratoga, and that the defendant did then and there, acting through its said agent, agree and obligate itself to ship said goods to plaintiff at Saratoga, that said goods were then in the possession of defendant in its unclaimed freight warehouse at Galveston, and that the defendant was then in position to ship the goods to plaintiff at Saratoga, and it then and there contracted and agreed to have same returned to plaintiff, but that, disregarding its contract to reship said goods, the defendant, on the 5th day of May, without authority in law, sold the goods.

The defendant, in its supplemental answer, admitted that on the 6th day of January, W. O. So Relle notified plaintiff that the goods had been received by the defendant at Beaumont, and that they had been forwarded to Galveston on December 21st, and that the said W. O. So Relle advised plaintiff to take the matter up with defendant's local agent at Saratoga, but denied the agent at Saratoga agreed or obligated the defendant to have plaintiff's goods shipped to Saratoga, and denied the authority of the local agent at Saratoga to make any such agreement, and alleged that, if such agreement was made, the said agent was acting beyond the scope of his employment.

The case was tried before the district judge without a jury, who, after having heard the evidence, rendered judgment in favor of defendant, except as to the sum of $83.65 tendered by the defendant to plaintiff, for which plaintiff was given judgment, to all of which the appellant duly excepted, and

perfected an appeal from said judgment to this court.

Upon request of the appellant, the court below filed its findings of act and conclusions of law, which are as follows:

"In compliance with the request of the plaintiff, I file the following as my findings of fact and conclusions of law in the above styled and numbered cause:

"First. I find that on August 30, 1912, there was shipped from Palestine, Tex., consigned to Beaumont, Tex., the household furniture and goods set forth in plaintiff's petition, consigned to shipper's order notify W. W. Whitley, and that said goods arrived in Beaumont on September 12, 1912.

"Second. I find that said goods remained in Beaumont, Tex., from September 12, 1912, until December 21, 1912, when they were shipped to Galveston, Tex., to be sold there at public auction at what is termed the 'old hoss sale'; that the freight charges thereon were never paid or tendered at any time.

"Third. I find that all unclaimed freight and freight upon which charges are not paid on the Gulf Colorado & Santa Fé Railway Company is shipped to Galveston, and there sold at public auction at what is commonly termed the 'old hoss sale.'

"Fourth. I find that during the time said goods remained at Beaumont notice that the freight was on hand at Beaumont was mailed by the defendant to the plaintiff on September 23, 10, 17, and October 3, 7, and November 20, 1912; that only one of these notices was returned to the railroad unclaimed, which was the notice mailed on November 20, 1912.

"Fifth. I find that after the arrival of the goods at Galveston they were duly advertised for sale as is required by law covering the sale of unclaimed freight, and were properly sold on May 5, 1913, for $109.10. The parties hereto all admitted that the defendant had the right to take said goods to Galveston and sell same, and that the sale was in all respects proper and regular, unless such right was interrupted or interfered with by the alleged contract or agreement of the local agent at Saratoga to have said goods reshipped. Having found herein that no binding agreement or obligation on the company was thereby made, I find the defendant had the right to make such sale, and that same was legal and valid.

"Sixth. I find that at the time of the sale of said goods there was due on same as freight charges, storage charges, and demurrage charges the sum of $25.45.

"Seventh. I find that W. W. Whitley, after his goods had been forwarded to Galveston, to be there sold, went to the local station agent of the Gulf, Colorado & Santa Fé Railway Company at Saratoga, and notified the said agent that said goods were at Galveston, and that he wanted them shipped to him at Saratoga.

"Eighth. I find there is no evidence that the local station agent of the Gulf, Colorado & Santa Fé Railway Company at Saratoga ever notified the defendant at Galveston, or any of its agents at Galveston, or notified the defendants or its agents at Beaumont, that W. W. Whitley wanted said goods shipped to him at Saratoga.

"Ninth. I find that at the time the plaintiff requested the defendant's local agent at Saratoga to have said goods shipped to him at Saratoga that he did not tender the amount of freight and storage charges due on said goods or any amount whatever.

"Tenth. I find that the only evidence of the value of the goods was the value of said goods during March, 1912, as testified to by Mrs. W. W. Whitley, and that there is no evidence of the value of the goods on August 30, 1912, the date on which they were shipped from Palestine, or on September 12, 1912, the day on which they arrived at Beaumont, or on May 5, 1913, the day on which they were sold at Galveston.

"Eleventh. I find that Mrs. W. W. Whitley packed the goods set forth in plaintiff's petition during March, A. D. 1912, and delivered them to Wyatt, McInnis & Denby to be stored by them.

"Twelfth. I find that said goods were delivered by Wyatt, McInnis & Denby to the International & Great Northern Railway Company on August 30, 1912, but there is no evidence of the care and treatment of the goods during the period from the —— day of March, A. D. 1912, to August 30, 1912, nor of their condition at any time after delivery to said Wyatt, McInnis & Denby at Palestine.

"Conclusions of Law.

"From the above and foregoing findings of fact I conclude as a matter of law:

"First. That the defendant, Gulf, Colorado & Santa Fé Railway Company, had a right to sell said goods at public sale at Galveston, and that said sale was legal and valid.

"Second. It is my conclusion that no legal or binding agreement or contract was made by the plaintiff with the local station agent of the defendant at Saratoga with respect to a reshipment of the goods from Galveston to Saratoga, or any other disposition of the goods. I further conclude that the conversation or statements made by the plaintiff to or with the local agent at Saratoga after January 5th did not, in law, amount to notice to this defendant of any claim or demand by the plaintiff relative to said goods they being at the time at Galveston, and that same was not sufficient to prevent said sale, or interfere with defendant's right to sell said goods.

"Third. It is my conclusion that the measure of damages in a suit for conversion is the value of the goods at the time of the conversion, and that the burden of proof is on the plaintiff to show this value, and that the burden is not discharged by proving (if such was done) the value of the goods at a period of at least five months prior to the date of the conversion, and at least five months prior to the delivery of said goods to the railroad company at Palestine.

"It having been agreed that at some time (not stated) defendant tendered to plaintiff the difference between the amount received from the sale and the freight and other charges, the court renders judgment for plaintiff against defendant for said amount, together with costs (as to costs, there is no objection)."

[1] Appellant, under the second, third, and fourth assignments of error, attacks the holdings of the court that there was no valid and binding agreement or obligation on the part of the defendant railroad company to reship said goods from Galveston to Saratoga, and that the agent at Saratoga was without authority to bind the company to reship said goods. The evidence is practically undisputed:

That on or about the 6th of January, 1913, plaintiff received a letter from W. O. So Relle, agent of defendant company, as follows:

"In reference to your favor of 5th in regard to some household goods shipped from Palestine August 30, 1912, these goods remained in our warehouse unclaimed for four months, and were forwarded to our unclaimed warehouse on December 21st, covered by my waybill 2340. If you will take the matter up with our agent at Saratoga, he will be able to have the goods returned to you at Saratoga."

That thereafter he took the matter up with the agent at Saratoga, showed him this let-

ter, and that the agent there stated that he had also received a letter from Mr. So Relle, and that he would have the goods returned as plaintiff requested, to the plaintiff, at that point, and that he (plaintiff) repeatedly, after receiving the letter, and up to the time he learned of the sale of the goods, tried to have them reshipped to Saratoga. That C. L. Stevens was the agent of the Santa Fé at Saratoga, and that he (Stevens) knew the plaintiff, and that he remembered the plaintiff coming to him about the shipment of household goods. That he (plaintiff) wanted them forwarded to Saratoga. That he could not remember the details of the matter, but that the files at the Saratoga office would probably show all the correspondence affecting the same. That he had been in the railroad business working for the Santa Fé 10 or 12 years. That it would have been his duty to write the auditor of the railroad at Galveston to have plaintiff's goods reshipped to Saratoga, and that he had authority to do this, and that his recollection is that he traced the shipment. That W. O. So Relle, who wrote the letter herein referred to, was the agent of the defendant company at Beaumont at that time. That he knew Mr. Whitley was after the goods in question. That he knew they were in Galveston. That he received a letter from Mr. Whitley making inquiry about them. That he immediately took it up and advised him (Whitley) to consult with the agent at Saratoga, and that the agent at Saratoga had authority to have the goods reshipped from Galveston to Saratoga.

The appellee relies upon the following cases to sustain the judgment of the court, holding that the agent at Saratoga did not have authority to act in the matter of having the goods reshipped from Galveston to Saratoga, to wit: M., K. & T. Ry. Co. v. Belcher, 88 Tex. 549, 32 S. W. 518; G., C. & S. F. Ry. Co. v. Dinwiddie, 21 Tex. Civ. App. 344, 51 S. W. 353.

In the case of M., K. & T. v. Belcher, supra, the plaintiff attempted to recover special damages from the railroad by reason of the delay in the delivery of a carload of cotton seed. The hulls were to be shipped from Sherman to Gainesville. The consignee went to the local agent at Gainesville and told him of the purpose for which the hulls were to be used, and told him of the necessity for prompt delivery. The shipment was delayed and suit was brought against the railroad company. On certified question from the Court of Civil Appeals to the Supreme Court, the certificate containing, among other things, the following statement:

"The evidence does not inform us as to the extent of the power actually conferred by appellant [the railroad company] upon its * * * station agents, etc.," and "whether notice to the agent at Gainesville was notice to the company, and whether it was within the scope of his agency to transmit the information received to the agent at Sherman,"

—in answering these questions, the Supreme Court said:

"The general rule is that notice to the agent is notice to the principal. The word 'agent,' as used in this connection, means the person who has power to act for the principal with reference to the very subject-matter to which the notice relates, and does not include a person who has no such power, though he may have power to act for the principal with reference to similar subjects. The words 'agent' and 'act' are from the same root, and the above limitation of the use of the former is inherent in its derivation. Prima facie the person in charge of the station at Gainesville, who is commonly termed the station agent, had no power to act for the company in reference to the making of the contract of shipment of the car of hulls from Sherman. The car did not come within the apparent scope of his agency until it reached Gainesville. Until then he had no power to act for the company with reference thereto, and the use of the word 'agent' with reference to him, in the application of the general rule above stated to the facts of this case, is inaccurate and misleading. It follows that the notice to him was not notice to the company. * * *

"For the same reasons, we do not think it was within the apparent scope of his agency to transmit the information to the agent at Sherman, and therefore his failure to do so would not render the company liable, any more than if the information had been delivered to an entire stranger to the company, and he had failed to transmit. We know of no principle of law requiring an employé to transmit to another employé of a common employer information given him by a stranger in reference to business beyond the scope of his agency, or that will impute knowledge of such information to the other employé or the master upon his failure to transmit. We therefore answer the first question certified in the negative."

In the case of Railway Co. v. Dinwiddie, supra, the court held that a railroad agent at one station had no authority to contract to furnish cars at another station, and that, if he did make such a contract, he was acting outside the scope of his authority. There was nothing in the record of that case which undertook to disclose what the authority of the agent was in such matters.

The sum and substance of the rule announced by the Supreme Court in the Belcher Case is that, in the absence of a showing of authority, a local agent has no right to bind his company concerning matters and transactions beyond his own station, as well as outside of his department of service, and all of the cases since that time, upon examination, will be found to be based upon facts where the record is silent as to the authority of the agent to act. I. & G. N. v. Sammon, 35 Tex. Civ. App. 96, 79 S. W. 854; Railway Co. v. Jackson et al., 99 Tex. 343, 89 S. W. 968; Railway Co. v. Cox, 47 Tex. Civ. App. 84, 103 S. W. 1122; G., C. & S. F. v. Cunningham, 51 Tex. Civ. App. 368, 113 S. W. 767; Gathright v. Pacific Exp. Co., 105 Tex. 157, 145 S. W. 1185; Railway Co. v. Breaux, 150 S. W. 288; Anderson v. Railway Co., 156 S. W. 358.

The rule as announced is a logical one; for the law of this state does not fix nor superscribe the duties of a local station agent. The breadth and scope of the duties

of such agent is a matter of proof. In the absence of such proof, there is no apparent or implied authority to act.

In the instant case the testimony is uncontradicted, and the proof unassailed by appellee, that the agent at Saratogo had the power and authority to have appellant's goods reshipped from the company's warehouse at Galveston to Saratoga, Tex., and in this respect it differs from the other cases cited and relied upon by appellee to sustain the trial court's judgment.

For the reasons herein stated, we think appellant's second, third, and fourth assignments of error should be sustained.

Appellant, in his first assignment of error, attacks the holding of the court that the evidence was not sufficient to establish the value of the goods at the date of their conversion and sale.

[2] The rule in this state seems to be well settled that secondhand household effects are regarded as having no recognized or fixed market value, in cases of the kind under consideration, and in determining the amount of damages to be awarded for their destruction the court should consider the original cost of the property, the manner in which it has been used, its general condition and quality, its age, etc., Wells Fargo Exp. Co. v. Williams, 71 S. W. 315; Railway Co. v. Nicholson, 61 Tex. 550.

[3] The record shows that the plaintiff introduced evidence by his wife to the effect that in the latter part of March, 1912, she packed the goods in question at Palestine, and stored them with dealers in furniture in that city to be subsequently shipped to Beaumont, and that she had not seen the goods from the time she packed them; this witness also testifying as to the cost bill value of each item, the age, use, and condition when stored, that the goods consisted of rugs, bed linen, feather pillows, table linen, clothes, pictures, music, furniture, and, among other things, a piano, and the amount which she considered their value to her and to plaintiff at the time they were packed and stored at Palestine.

Mr. So Relle, the agent for the defendant company, testified that it was the custom to ship household goods only when the freight was prepaid, but—

"if household goods are in good condition, are well crated and well packed, sometimes we take them without being prepaid. It is exceptional. The rule is that they be prepaid."

Appellee contends that the measure of damages for the conversion of property is the value of the goods at the time of conversion, and that the burden of proof was on the appellant to establish this value by competent evidence, and that the only evidence in this case in respect to the value of the goods or of their condition is confined to the condition of the goods at the time she packed them, which was four months before they were delivered to the railroad company, and nearly ten months before the date of the alleged conversion.

In the case of Monday v. Vance, 51 S. W. 349, personal property had been sequestered, and a replevin bond subsequently given. The value of the personal property sequestered and replevied was alleged to be $1,000. The proof as to the value of the property was confined to such value at the time it was replevied, and not at the time of the trial, and the court held in that case that such property would be presumed to be of the same value at the time of the trial as when replevied, in the absence of proof to the contrary. A like presumption was indulged by the court in the case of Norwood v. Interstate National Bank, 45 S. W. 927, and again in the case of Levy v. Lupton, 156 S. W. 362.

In the instant case the testimony is undisputed that the personal property involved in this suit was stored in a warehouse under the supervision and control of people who were in the furniture business; that the goods at the time of the delivery to the railroad company at Palestine were in such condition and so well packed as that the general rule and custom to demand prepayment of freight on household goods was waived. Under the testimony of Mr. So Relle, this custom was only exercised when the goods "were in good condition, well crated and well packed." Shortly after that time the goods came into the possession of the defendant company, and remained under its supervision and control until they were sold in the following May, 1913. There is no evidence of any sort or kind in the record showing that the goods were exposed to the weather, or to any conditions which would cause them to be deteriorated in quality so as to show a depreciation in value between the time they were packed and the time they were alleged to have been converted. Under the circumstances of this case, we think the rule can be applied presuming that they were in the same condition when converted that they were in when left in storage with the furniture company at Palestine. We therefore think appellant's first assignment of error, for the reasons herein stated, should be sustained.

[4] In view of the fifth finding by the trial court to the effect that the parties hereto all admit that the defendant company had the right to take said goods to Galveston and sell the same, and that the sale was in all respects proper and regular, unless such right was interrupted or interfered with by the alleged contract of agreement of the local agent at Saratoga to have said goods reshipped, we refuse to consider appellant's fifth assignment of error, which is, in substance, that the defendant company had no right to sell the goods of appellant in the "old hoss sale."

It follows that this cause will therefore be reversed and remanded for a new trial; and it is so ordered.