MEYER BROTHERS DRUG COMPANY v. MADDEN-GRAHAM & COMPANY.

Decided January 19, 1907.

**1.—Leased Premises—Damage by Fire—Evidence.**

In a suit for the rent of leased premises where the contract of lease provided that if the premises should be so damaged by fire as to be unfit for occupancy the lease should terminate, and the issue on the trial was the extent of the damage, evidence as to the amount of damages claimed by the landlord and paid by the insurance companies was admissible.

**2.—Expert Testimony—Direction of Court.**

Testimony of expert witnesses as to whether or not a building recently damaged by fire was suitable for storing dry goods, considered, and held admissible. The admission of expert testimony is always for the determination of the trial court, and the action of the court will not be reviewed unless gross abuse of its discretion is made to appear.

**3.—Rebutting Testimony.**

For the purpose of showing that the walls of the leased building had been weakened by fire the defendants proved that after the fire one of the walls had been anchored; the plaintiffs should have been allowed to prove in rebuttal of this idea that the anchoring of unsupported walls was in accordance with the rules of good building, and that the wall was anchored without regard to the effect of the fire.

**4.—Improper Remarks of Counsel—Reference to Former Trial.**

While it was improper for counsel for defendant to refer in the hearing of the jury to the action of the jury upon a former trial, under the facts and circumstances of this case such conduct was not sufficient cause for new trial or reversal.

Error from the District Court of Dallas County. Tried below before Hon. Richard Morgan.

*Cockrell & Gray* and *Wendel Spencer* for plaintiff in error.—Where a store building is under lease for a term under a contract of lease providing that same shall cease if a fire so damages the premises as to render them unfit for occupancy, and where the issue between the lessor and lessee is, whether or not such contingency has happened, and that issue is litigated, it is wholly irrelevant to admit in evidence the fact of an adjustment of insurance contracts covering the leased building, made between the lessor and insurance companies. With such insurance and its adjustment the lessee has nothing to do. 1 Greenleaf on Ev., sec. 52; McKelvy on Ev., Cr. 8, secs. 90-95; Gillett's Indirect and Collateral Ev., sec. 56, and notes; Kellogg v. McCabe, 92 Texas, 199; Texas & Pac. Ry. Co. v. Levi, 59 Texas, 674.

Where the issue being tried before the jury is as to whether a store building has or has not been rendered unfit for occupancy by a fire, it is error to allow a witness after stating all the facts within his knowledge as to the condition of the building, then to state that in his opinion water and dampness would have a very damaging effect upon certain goods if placed in the building. Nor is it competent for such witness to state as an expert that it would not have been safe or practicable to have placed a certain stock of goods in the building. Shelley v. City of Austin, 74 Texas, 608, and authorities there cited; Houston, etc.,

Ry. v. Sciacca, 80 Texas, 354; International, etc., Ry. v. Kuehn, 2 Texas Civ. App., 216; Locke v. International & G. N. Ry. Co., 60 S. W. Rep., 316; Graham v. Pennsylvania Co., 139 Pa. St., 149; Van Wycklen v. Brooklyn, 118 N. Y., 424.

Where the issue being tried before the jury is as to the strength and safety of a business house after fire damage thereto, and the lessee of the building, claiming that the building was rendered unfit for occupancy, introduces testimony that one of the walls of the building was anchored by mechanics making repairs on the building—thus supporting his contention that the building was unsafe, it is competent for the lessor, owner of the building, to show that the wall thus anchored had lost its support by the destruction of an adjoining building, and that it was in accordance with the rules of good building to anchor what had become an outside wall, and that this would have been proper even if same had been a new wall, and that such anchoring of the wall did not imply that the wall was dangerous or insufficient. Such testimony is competent and relevant to meet the testimony of the lessee that the anchoring of the wall necessarily implied that the building was unsafe. Continental, etc., Co. v. Pruitt, 65 Texas, 129; Finn v. Cassidy, 165 N. Y., 593.

*E. B. Perkins, Finley, Knight & Harris* and *D. Upthegrove,* for defendants in error.—Where one party to a lease contract alleges only slight damage to the building by fire and that such damage could and had been repaired at small cost, evidence that such party had made a claim against and collected a very much greater amount from the insurance companies is admissible both to contradict such testimony as to the extent of the damage to the building in controversy and to show as a matter of fact that very extensive and material damage was done to the building by the fire and that such damage was greater and more serious than was alleged, testified to and claimed by such party. Greenleaf on Evidence, sec. 51a; Jones on Evidence, sec. 170; Wells v. Fairbanks, 5 Texas, 583; Goldman v. Blum, 58 Texas, 641.

Testimony of experienced merchants and business men is admissible on the issue of whether or not a fire has so damaged a building as to render the same unfit for occupancy as a wholesale dry goods house, and the court having passed upon the competency of such witnesses to testify, it is not error to submit their opinions for the consideration of the jury. Continental Ins. Co. v. Pruitt, 65 Texas, 129; Ft. Worth & Denver v. Thompson, 75 Texas, 501; 5 Enc. of Evidence, p. 590; Erhardt v. Ballin, 55 Fed. Rep., 968; Forcheimer v. Stewart, 73 Iowa, 216; Ah Tong v. Earle Fruit Co., 112 Cal., 679; Buchanan v. State, 109 Ala., 7; Paddock v. Bartlett, 25 N. W. Rep., 906; Sonneborn v. Southern Ry., 65 S. C., 502.

Witnesses who have had years of experience in the dry goods business and after making an examination of the building which has been damaged by fire, can give their opinion as to whether or not it was safe or practicable to put a wholesale stock of dry goods in such building and conduct a wholesale dry goods business therein, such opinion being based upon the facts and conditions found by the witnesses to exist immediately after the damage to the building by fire. Abbott's Trial Evidence,

307; Continental Ins. Co. v. Pruitt, 65 Texas, 129; Gulf, C. & S. F. Ry. v. Dunman, 85 Texas, 179; Missouri Pac. Ry. v. Jarrard, 65 Texas, 565; Galveston, H. & S. A. Ry. v. Daniels, 28 S. W. Rep., 548; Sonneborn v. Southern Railway, 65 S. C., 502; Jackson v. Wells, 35 S. W. Rep., 529; International & G. N. Ry. v. Klaus, 64 Texas, 294; Gulf, C. & S. F. Ry. v. Locker, 78 Texas, 279.

Where statements are made by counsel for defendant, and the court instructs the jury not to consider such remarks, and in addition thereto both the court and the opposing counsel state in the presence and hearing of the jury that the remarks made by counsel in their hearing are not true, it is unreasonable to suppose that the jury were in any way influenced by such remarks, and especially where plaintiff can show no injury resulting therefrom, and it. is not error for the trial court to refuse to grant a new trial. Willis v. McNatt, 75 Texas, 69; McLane v. Paschal, 74 Texas, 20; Galveston, H. & S. A. Ry. v. Croskell, 25 S. W. Rep., 490; Sherman S. & S. Ry. v. Bell, 58 S. W. Rep., 147; Oriental Investment Co. v. Barclay, 64 S. W. Rep., 89; International & G. N. Ry. v. Irvine, 65 Texas, 535; St. Louis & S. F. Ry. v. Daughtery, 31 S. W. Rep., 705; Galveston, H. & S. A. Ry. v. Dulem, 23 S. W. Rep., 599; Brown v. Perez, 89 Texas, 286.

TALBOT, ASSOCIATE JUSTICE.—This is a suit on a lease contract instituted by plaintiffs in error against the defendants in error, who will hereafter, for sake of brevity, be styled plaintiffs and defendants respectively, whereby plaintiffs leased to defendants on the 19th day of October, 1901, for the term of two years and eight months from January 1, 1902, to be occupied by it as a wholesale dry goods and notion house, the building known as number 149-151, situated on Elm Street in the city of Dallas. Plaintiffs sought to recover by this suit as rents the sum of $3,000, and as damages to the rented premises $817.50. The petition alleged, the amount of rent agreed to be paid and the dates of payment. Also that defendants agreed to keep, at their own expense, the premises, including the plumbing work, closets, pipes and fixtures, in good repair, etc. That defendant took possession of the premises by virtue of the lease contract and paid the monthly installments of rent up to the first day of May, 1903, but on that day defaulted in the payment of the rent then due and has remained in default in the payment of the rents due on said contract since that date. It was further alleged that defendants failed to exercise ordinary care in respect to the leased premises but permitted thieves, burglars and other evil disposed persons to trespass thereon, who inflicted great damage upon said premises by stealing and taking therefrom and destroying the water pipes, plumbing work, basins, closets, electric meter and wiring; also the doors, windows and platform scales. Defendants, after a general demurrer and general denial, pleaded the following provision of the lease contract: "that the lessees shall in case of fire give immediate notice to the lessors, who shall thereupon cause damage to be repaired forthwith and if the premises be so damaged as to be unfit for occupancy, or if the lessors shall decide to rebuild, the lease shall cease and the rent be paid up to the time of the fire." That on April 17, 1903, a fire occurred in a building adjoining the leased premises, which was communicated thereto and as a direct

result thereof the leased building was greatly damaged—setting out the character and extent of the damage—and to such an extent as to render it unsafe and unfit for occupancy. Defendants further alleged that of all the damage done the leased building they gave immediate notice to plaintiffs and that by reason of said damage the lease contract was terminated. They also alleged in the alternative that if the building was not rendered unfit for occupancy by the fire and the lease contract terminated thereby as alleged by them, then the said contract was breached by plaintiffs and of no further force and effect, for that immediately after the occurrence of the fire, defendants gave plaintiffs notice of the same and of the resultant damage to the demised building and in violation of the lease contract defendants failed and refused to cause said damage to be repaired forthwith and so failed and refused for a number of months after said fire. There were other defenses pleaded, but in the view we take of the case we deem it unnecessary to state them. By way of replication plaintiffs pleaded special demurrers, which were overruled, a general denial and that upon the occurrence of the fire in the building adjoining the demised premises the defendants wrongfully declared that the lease contract was terminated, and that they would no longer occupy the leased premises; but that plaintiffs at all times informed defendants that said contract had not been terminated, that the fire had not rendered the leased building unfit for occupancy and offered to forthwith repair all damage that had occurred to the leased building, which they averred was very slight; but that defendants declared the lease contract had been terminated and that it would not occupy the building, even though plaintiffs should proceed forthwith to repair all damage which had been done thereto. A jury trial resulted in a verdict for defendants and plaintiffs have brought the case to this court on writ of error.

The chief or controlling question for the determination of the court and jury below and presented in this court is: Was the premises leased by plaintiffs to defendants so badly damaged by the fire which occurred in the adjoining building as to render said leased premises unfit for occupancy by defendant?

Plaintiffs' first and second assignments of error complain of the action of the court in permitting defendants to prove upon this issue, over plaintiffs' objection, that the leased building at the time the fire occurred was insured; that plaintiffs, under their insurance policies, made claim for damage to said building occasioned by said fire and that such claim was adjusted by plaintiffs and the insurance companies at the sum of $2,228.22 and by said companies paid to plaintiffs. As stated, the vital issue was whether or not the building in question was damaged to such an extent as rendered it "unfit for occupancy." The plaintiffs averred and offered testimony to the effect, that the damage was only slight and subject to repair and had been repaired at small cost. The evidence objected to consisted of the testimony of witnesses and a detailed statement of skilled architects selected by plaintiffs and the insurance companies, for the purpose, showing the various items of damage to the building, their character, location and estimated cost of repair, aggregating the said sum of $2,228.22, which plaintiffs had received. It seems to be well settled that "evidence which tends in any

degree to establish the fact in controversy or which affords any fair presumption or inference as to the principal matter or fact in dispute is admissible." Such we believe was the tendency of the evidence objected to in a rather pronounced degree in this case, and that it was properly admitted.

Nor do we think the court erred in admitting the testimony of the several witnesses as pointed out in plaintiff's third, fourth, fifth, sixth, seventh, eighth, ninth, tenth and eleventh assignments to the effect, that in the opinion of said witnesses dampness in premises would have a bad effect upon almost all kinds of goods carried in a dry goods store, that such effect would be to damage the sale of said goods and that it would not have been safe or practicable to have put a stock of goods in the building in the condition it was in after the fire. The matter to which the testimony related was the subject of expert testimony and the several witnesses sufficiently qualified to testify as such. Each of them had been engaged in the mercantile business for some years, and showed himself possessed of such knowledge of the facts inquired about as to make his opinion of value upon the subject undergoing investigation. Besides, whether the witness has qualified himself to testify as an expert, or whether expert or opinion evidence is admissible upon any subject of inquiry is a question for the determination of the trial court and will not be reviewed on appeal unless a gross abuse of its discretion is made to appear. (Texas & Pac. Ry. Co. v. Warner, 93 S. W. Rep., 489; Galveston, H. & S. A. Ry. Co. v. Daniels, 28 S. W. Rep., 550; Montana Ry. Co. v. Warren, 137 U. S., 348.)

We are also of the opinion that the testimony of the witness D. G. McCord to the effect, "that it would have been in accordance with the rules of good building to have anchored the west wall of the leased building, after the destruction of the adjoining building," which was excluded by the court upon the objections of defendants, was admissible. One of the issues affecting the question of the "unfitness of the building for occupancy," was whether or not the west wall thereof had been so weakened by the fire as to render it liable to fall. As tending to show that it had been so weakened, defendant proved, that after the fire anchors had been placed in the wall with a view of strengthening it. In rebuttal of that idea and suggestion plaintiffs clearly had the right to show that the rules of good building called for the anchors, without regard to any effect the fire may have had upon it, and for that reason the anchors were put in it and not on account of any weakened condition produced by the fire. But we think the exclusion of the proffered testimony of this witness on the question does not constitute reversible error. Practically the same testimony was given by another witness, and the fact was not controverted in any manner by the defendants. On the cross examination of E. W. Morris, a witness for plaintiffs, he testified: "that as a builder he thought it was a rule of good building to anchor a brick wall, even a new brick wall, where it had no support from the outside." With this uncontradicted and unequivocal statement of the disinterested witness, Morris, before the jury, the fact to which it related was established beyond controversy and the exclusion of McCord's testimony was harmless.

Plaintiffs' eighteenth assignment of error complains that the court

erred in refusing to grant it a new trial because of improper and prejudicial remarks of defendants' counsel made in the hearing of the jury, during the progress of the trial. Relating to this matter, as far as is necessary and material to state, the record shows, in substance, that, during the examination of the witness O. T. Graham, a controversy arose over the admissibility of certain testimony offered by defendants, claimed by them as tending to show that the agents of plaintiffs, shortly after the fire, voluntarily accepted the keys and a surrender of the leased building from defendants. This testimony was objected to by plaintiffs' counsel as being irrelevant and immaterial, whereupon the court inquired whether or not counsel for defendant was prepared to make proof, different from that offered on former trials of the case, that the keys were delivered to agents of plaintiff authorized to receive them. A lengthy colloquy then ensued between the court and counsel, during which the court remarked, "I will sustain the objection, counsel evades the question." Counsel continued to insist that he proposed to prove that the keys were taken to Murphy & Bolanz, agents of plaintiffs, who had retained them ever since; that said agents had the building for sale and sold it; that defendant did not know plaintiff until after the original lease was made, and that said agents demanded the rents of the building on the first of the month after the keys had been delivered to them, as the agents of plaintiff. To this the court replied: "Well, you can do that, but I know and counsel knows from the testimony heretofore, that Murphy & Bolanz had no authority to receive the surrender of the building and it is just a waste of time to put it in." Counsel then, after some further passages between him and the court, remarked, "two juries have passed on that question and found for the defendant, and differed with your honor about that." This statement was emphatically denied by both the court and counsel for plaintiff and exceptions were taken thereto, and the court adding, "Certainly, the jury will not consider that remark by Mr. Knight, unless he takes the stand." Further denials of the statement of defendants' counsel having been made he remarked, "Well, twelve of one jury and eleven of another found for us on these facts," and counsel again excepted. None of counsel's statements were addressed to the jury, but to the court and opposing counsel. We regard the remarks of counsel improper but are not prepared to say, in view of the repeated and emphatic denials of them by both the trial judge and counsel for plaintiff, the evidence in the case and issues upon which it was submitted, that they influenced the jury. The evidence was amply sufficient to justify the verdict of the jury and as we understand it, the specific question upon which it was asserted that two juries had passed and determined in favor of defendants, was not submitted to the jury on this trial, and their verdict does not embrace a finding upon it. The controversy, in which the remarks complained of were made, arose over the exclusion of testimony offered to raise the issue which counsel remarked had been decided in defendants' favor by former juries; and it was to this issue and not to any passed upon by the last jury trying the case that the remarks applied. In the case of McLane v. Paschal, 74 Texas, 20, it appears that counsel in closing the argument said: "This case was brought here on appeal from the County Court, was tried and appealed, was reversed and re-

manded and tried again in this court, both juries finding all of blocks 27 and 31, together with improvements, to be her homestead," and after exceptions taken to the remarks, counsel again stated in substance, "that two juries had already found this property to be the old lady's homestead and he expected this jury would do the same." These remarks having been assigned as error, Judge Stayton, in passing upon it, said: "It seems that counsel for appellee in the closing argument made reference to former findings by juries in the case, and for this reason it is urged that the court below should have granted a new trial. Such course of argument was not proper, but looking to the evidence in the case there is no reason to believe that it influenced the jury, and this was evidently the opinion of the judge who tried the case."

It is contended that the court erred in refusing to grant plaintiff a new trial, because the verdict of the jury is not only against the great preponderance of the evidence and clearly wrong, but is without evidence to support it. We do not agree to this contention. Whether or not the leased building had been rendered unfit for occupancy by the fire that destroyed the adjoining building depended upon the nature and extent of the damage thereto. Upon this question the testimony was conflicting, but sufficient in our opinion to justify the finding of the jury. The rule is firmly established in this State, that an Appellate Court is not authorized to disturb the verdict of a jury where there is any evidence to support it. But in this case we are of the opinion that there is substantial evidence to support the conclusion that the building involved in this controversy was damaged to such an extent as rendered it "unfit for occupancy" by defendants for the purposes for which it had been leased, and that by reason thereof the lease was terminated. This conclusion renders the discussion of any other question presented by the pleadings unnecessary, as being immaterial.

Finding no reversible error in the record, the judgment is affirmed.

*Affirmed.*