MISSOURI, K. & T. RY. CO. OF TEXAS et al. v. CAUBLE. (No. 8111.)

(Court of Civil Appeals of Texas. Ft. Worth. Feb. 20, 1915. Rehearing Denied March 20, 1915.)

1. EVIDENCE ☞544—INJURY TO LIVE STOCK —EXPERT EVIDENCE AS TO DAMAGE.

Witnesses who had experience extending over years in the cattle business in Oklahoma, and had seen cattle dipped in arsenic and in crude oil, sufficiently qualified as experts to testify to the general fact of injury to cattle by dipping in crude oil.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2356; Dec. Dig. ☞544.]

2. CARRIERS ☞230—INJURY TO LIVE STOCK— EVIDENCE OF DAMAGES.

Though witnesses who had qualified as experts on the general point how cattle might be injured by dipping in crude oil testified merely in a general way as to the probable damage from such action, and not specifically as to the market value of the cattle in suit at the place of dipping, such evidence was admissible as tending to establish the amount of damage.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 961, 962; Dec. Dig. ☞230.]

3. CARRIERS ☞229—INJURY TO LIVE STOCK —DAMAGES.

That live stock injured by negligent dipping in crude oil recovered is not ground for the preclusion of the owner from recovery for any depreciation in value caused thereby.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 930, 963, 964; Dec. Dig. ☞229.]

4. TRIAL ☞253—RECOVERY OF STOCK FROM INJURY—INSTRUCTION IGNORING FACTS.

Where there was evidence that stock injured by dipping in crude oil had to be given extra feed during the winter to fit them for market with other uninjured stock the plaintiff owned, an instruction that, if plaintiff's stock had recovered from the injury, if any, received in dipping, plaintiff could not recover, was properly refused, because ignoring such evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 613–623; Dec. Dig. ☞253.]

5. TRIAL ☞192 — INSTRUCTIONS — ASSUMING ADMITTED FACTS.

In an action against a railroad for injury to cattle by dipping in crude oil, where there was no controversy in the testimony, but that the stock was dipped in some sort of a solution, an instruction that assumed such dipping in some solution as a fact was not erroneous.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 432–434; Dec. Dig. ☞192.]

6. TRIAL ☞234—INSTRUCTIONS—EVIDENCE.

An instruction in an action for injury to a shipment of cattle that, if it was found that defendant was not negligent, or that the cattle were not injured by defendant's negligence, if any, then to find for defendant, was not erroneous as placing the burden on defendant of showing lack of negligence, where the court expressly charged that the burden was on plaintiff to establish his cause of action by a preponderance of the evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 534–538, 566; Dec. Dig. ☞234.]

7. TRIAL ☞234 — INSTRUCTION — BURDEN OF PROOF.

An instruction that if, at the time of shipment, plaintiff requested of defendants, and defendants agreed, to dip plaintiff's cattle in an arsenic dip, and defendants did dip the cattle in an approved arsenic dip, plaintiff could not recover any damage caused by the dipping of his cattle, was not misleading as putting the burden of proof on the defendants to prove their defense, where the court expressly charged that the burden was on plaintiff to prove his case by a preponderance of the evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 534–538, 566; Dec. Dig. ☞234.]

8. CARRIERS ☞215 — CARRIAGE OF LIVE STOCK—DIPPING.

Where plaintiff, owner of live stock, pleaded against defendant railroad a special contract by such road to dip stock transported by it in a special arsenic bath, and not in crude oil, and that defendant had breached such contract by dipping in oil, plaintiff stated a cause of action, since governmental regulations as to the prevention of diseases of stock and their spread, and the means used by the government to prevent diseases, are police regulations imposed on the railroads merely under governmental direc-

tion and supervision, for injury in the conduct of which the railroad is liable.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 923; Dec. Dig. ⊜⟶215.]

Appeal from Denton County Court; S. H. Hoskins, Judge.

Action by C. M. Cauble against the Missouri, Kansas & Texas Railway Company of Texas and another. Judgment for plaintiff, and defendants appeal. Affirmed.

R. H. Hopkins, of Denton, for appellants. J. A. Templeton, of Ft. Worth, for appellee.

BUCK, J. This suit was filed in the county court of Denton county for damages alleged to have been suffered by appellee by virtue of rough handling and delays in transportation of 362 head of steers shipped from Ft. Worth, Tex., to Vinita, Okl., on November 21, 1910, and for injuries alleged to have been sustained by reason of said cattle having been dipped in crude petroleum oil at Vinita, instead of in an arsenic dip, as plaintiff alleged the appellant companies, through their live stock agent, L. B. Comer, had agreed to do. The total damages alleged to have been suffered by reason of the two grounds of negligence was $2.25 per head for those injured, and $32 per head for 3 alleged to have been killed, or the sum of $903.75.

Plaintiff alleged that prior to the shipment of said cattle he went to see L. B. Comer and stated to him that he did not want his cattle dipped in petroleum oil, and asked him, should said cattle be shipped over the defendants' line of railway, whether the defendants were prepared to give, and would give, said cattle a dip in the arsenic solution approved by the proper officers of the government, and that said Comer stated to him that within the course of a few days they would be prepared to give said arsenic dip, and that they would have the vats at Vinita prepared and cleaned so as to give said dip, and that thereafter Comer informed plaintiff that they were prepared to give said arsenic dip, and he shipped said cattle in reliance upon said information and promise, and that he paid said defendant company, in addition to the freight, the charge for dipping the cattle in the arsenic dip. He further alleged that, in fact, said cattle were dipped in the petroleum dip, and that they were injured thereby, and that the oil remained on the cattle for many weeks, burned the hair off of many of them, and caused them to suffer greatly during the winter, and prevented them from taking on flesh and fat, to his damage. He further alleged that three head of cattle were so badly crippled and bruised when they arrived at Vinita that they died shortly after being unloaded, and that they were of the reasonable market value of $32 per head.

Defendants specially answered, first, that they were not liable for any alleged negligence in overloading or underloading the cars; that said cattle were delivered to them at Hodge Junction; that at the time they were so delivered they were already loaded in said cars, either by the Ft. Worth Belt Railway Company, or by the Ft. Worth Stockyards Company, neither of which said last-named companies was in any manner connected with, or the agents of, these defendants; and further denied any liability because of said alleged dipping in oil, and alleged affirmatively that said cattle were not dipped in the crude petroleum, as alleged by plaintiff, but were dipped in the arsenic dip, and under the supervision of the officer of the state of Oklahoma under the quarantine regulations of that state, and that the defendants were not responsible for any negligence of said officer. There were some other defenses set up in the answer not necessary here to mention.

Upon a trial before a jury a verdict and judgment was rendered in favor of plaintiff for the sum of $667.50, with interest at 6 per cent. from November 23, 1910, the date of arrival at Vinita of shipment, from which judgment this appeal is taken.

[1, 2] In the first and second assignments of error appellants complain of the admission of the testimony, first, of C. E. Nugent, and second, of C. J. Husslekamp, who testified to the depreciation in the market value of cattle dipped in oil over cattle dipped in arsenic solution, because, as claimed by appellants, these two witnesses failed to qualify as experts upon the question of the market value of the cattle in the shipment in controversy. Both of these witnesses testified to an experience extending over years in the cattle business in Oklahoma, and to have seen cattle dipped in arsenic dip, and also in crude oil, and, in substance, they testified that cattle submitted to the crude oil dip were injured, and were rendered thereby more expensive to carry through the winter and to fatten; that they required more feed to properly winter and fatten them than cattle submitted to the arsenic dip. Neither witness qualified to testify to the market value of these cattle at Vinita on the date named, and therefore appellants urged that there was error in admitting the testimony, because such testimony did not establish, or tend to establish, the measure of damages in this case, to wit, the difference, if any, in the market value of the cattle at Vinita if they had been dipped in arsenic and their market value if dipped in oil. It is true that such evidence did not alone furnish or conform to the legal measure of such damage, if any, but can we say that therefore it is inadmissible? If a certain treatment of cattle depreciates them in flesh or makes them sick, and consequently additional care and expense is required in the subsequent handling of said cattle, and additional feed required because of such treatment, is not such a fact admissible as probative of the main fact sought to be proved, to wit, the depreciation in market value of

the cattle in controversy by reason of such treatment? Because the evidence elicited does not go to the full measure of the test provided by law is no reason why it should be held inadmissible. It may tend to establish such measure of damages, though not in itself establishing it. In Houston Oil Co. v. Trammell (Sup.) 74 S. W. 899, the plaintiff complained that the defendant had sold him certain unsound cotton seed meal for cattle, and that in eating said meal said cattle were made sick, and that such cattle were injured thereby in the sum of $10 per head. Whereupon the defendant, upon a cross-examination of plaintiff, asked him "How much he received per head for the cattle sold in Kansas City and Chicago," to which question the plaintiff objected, "because the measure of damages is the difference between the market value of said cattle at West, Tex., before and after they became sick, and because the time at which they were sold was 40 to 50 days after they became sick," which objection the court sustained, and the defendant excepted. In passing upon this matter, the Supreme Court said:

"It is true that, as applicable to the facts of this case, the measure of damages as claimed is the difference between the market value of the cattle at West just before and just after they were made sick by eating the meal, and the evidence was not admissible to establish, as the measure of damages, the market value of the cattle at the places where sold as the criterion by which to determine the amount of recovery; but, the plaintiff having testified upon direct examination to the fact that the cattle had depreciated as much as $10 per head while sick, it was permissible on cross-examination to ascertain from him the price at which he sold the cattle at a subsequent, but not remote, date, because the testimony would tend to show that the plaintiff's opinion of the amount which the cattle had declined in value was not correct, and thus impeached the reliability of his judgment in making estimate of the damages sustained."

In Railway v. Jackson et al., 99 Tex. 343, 89 S. W. 968, the court held that it was admissible in an action against a carrier for breach of a contract for a shipment of cattle, where plaintiff testified that he formed an opinion of the market value of cattle at destination from the estimate of value which commission men placed upon cattle, for the purpose of determining the amount to be loaned on them, defendant should have been permitted on cross-examination to ask him what he paid for the cattle when he purchased them and the cost of shipping them to destination. Thus it will be seen that, while the evidence complained of does not meet the full measure of the criterion established by law, yet it discloses a condition or circumstance probative of the main fact sought to be proved, and therefore we believe that the first and second assignments should be overruled. This ruling is further sustained by the fact that another witness, W. F. Friend, testified without objection that he received the cattle in question at Vinita for plaintiff; that he knew their market value at that place

before they were dipped and afterwards; and that it cost from $3 to $5 more to winter the cattle dipped in the oil dip than it did others. Railway v. Hughes, 73 S. W. 977, and authorities there cited; Green's Tex. Dig. vol. 1, pp. 743–751.

[3, 4] The third assignment complains of the action of the court in refusing to give defendant's special charge No. 1, as follows:

"You are instructed in this case that, even if you find from the evidence in this case that said cattle were damaged from delay and rough handling, and that they were dipped in oil, instead of in arsenic, yet, if you believe from the evidence that when said cattle were placed upon pasture that they fattened and were fit for the market as early as other cattle which the plaintiff had in Oklahoma in the same vicinity at said time, then the plaintiff cannot recover in this case."

In the proposition under this assignment appellants submit that no damage will lie where plaintiff charges that the cattle had been damaged in shipment, and it is shown by proof that they recuperated in the same length of time as other cattle shipped at the same time and in the same vicinity. The witness W. F. Friend testified:

"These 430 and 81 head were delivered to Little Bros., of Ramona, Okl., that spring. I did not deliver just this lot. I delivered all the cattle there was. I delivered these three shipments to Little Bros., less the 18 that died."

And Joe Little, another witness, testified:

"When these cattle were first brought to my pasture they were poor and in bad condition. We shipped some of the cattle out in July and some of them in September. When these cattle were shipped out they were not fat, but they had done well considering the season. The season had been bad and the pasture poor. These cattle had done as well as the majority of cattle in this country."

Upon this testimony appellants insist that the charge tendered should have been given. While the testimony was admissible as tending to show that the cattle had not been injured, or had not depreciated in market value by reason of the negligence alleged, yet the fact that the cattle included in this shipment and subjected to this dip, as alleged in plaintiff's petition, fattened during the winter and sold thereafter at as good a price as other cattle not included in the shipment, or not subjected to the dip, would not preclude a recovery by plaintiff, if, in fact, the cattle were in reality depreciated in value by reason of said dip, and if defendant was guilty of negligence in the manner of giving or preparing for said dip. Houston Oil Co. v. Trammell, supra. Moreover, we think the charge submits the incorrect measure of damages, and is on the weight of the evidence. Several of the witnesses for plaintiff testified that certain of these cattle alleged to have been dipped in oil had to be fed during the winter because of their debilitated condition due to said dip, and that, in order to prepare these cattle for market, it was necessary to spend for feed on them more than on others which had not been so treated. The special charge requested ignores

this evidence entirely. This assignment is overruled.

[5-8] In their fourth and fifth assignments the appellants complain of the giving of certain paragraphs of the court's charge. The fourth is as follows:

"The court erred in the fourth subdivision of his charge, wherein he uses the following language, to wit: 'Take the difference between the market value at Vinita, Okl., in their injured and damaged condition, if they were damaged at the time of their delivery *before they were dipped.*' The court erred, for the words underscored constitute a charge on the weight of the testimony, and because the court unduly emphasized the fact that they were dipped, and because the fact they were dipped had nothing to do with the damage, if any, occasioned by the delay in transportation or the damage incurred by rough handling."

Paragraph 4 of the court's charge is as follows:

"If you find for plaintiff, you will in such event find and assess the damages against the defendants at the difference between the market value of the cattle at Vinita, Okl., in their injured and damaged condition, if they were damaged, at the time of their delivery, and before they were dipped, and their market value at Vinita, Okl., at the time and in the condition they would and should have been delivered but for defendants' negligence, if you find they were negligent, with 6 per cent. interest from November 23, 1910, to this date."

As will be seen, appellants have, unintentionally, no doubt, misquoted said charge, but, irrespective of this discrepancy between the charges given and as quoted in the assignment, we are unable to see how any injury could result to appellants by the court's assuming that said cattle were dipped; for all of the witnesses who testified on this question testified that the cattle were dipped, and the only controversy was as to whether they were dipped in a solution of crude petroleum or of arsenic. We think, if any criticism is sustainable to this paragraph of the court's charge, it is that it is too favorable to the defendants in that it excludes from the consideration of the jury any depreciation in value or injury to the cattle which might have occurred by reason of the rough handling and delay in transportation alleged by plaintiff, and predicates the entire right of recovery upon the question of injury arising by reason of said dip. We find no error shown in the fourth assignment. The fifth section of the court's charge instructs the jury as follows:

"If you find from the evidence that the defendants were not guilty of negligence in the handling and transporting [of] said cattle over the railway, or if you find that the plaintiff's cattle were not injured by a result of said negligence if there was negligence, you will in such event find for the defendants upon plaintiff's claim for delay in transportation and rough handling."

Appellants in their fifth assignment allege error in that this charge puts the burden of proof upon the defendants to show that they were not guilty of negligence. We think that such assignment is hypercritical, inasmuch as the court later in his charge gave a correct instruction as to the burden of proof being upon the plaintiff to establish his cause of action by a preponderance of the testimony. While it might have been better if the court had differently worded this paragraph, yet we cannot see that any injury was done to defendants, or that the jury were probably misled by reason of the said paragraph. Consequently the fourth and fifth assignments are overruled.

The sixth assignment urges error in "section 8" of the court's charge. We presume that this is a clerical error, and that the reference should be to section 6 of said charge, which is as follows:

"If you find from the evidence that at the time of shipment plaintiff requested of defendants, and defendants, through their local agent, agreed, to dip plaintiff's cattle in an arsenic dip, and you find that defendants did dip or cause the cattle to be dipped in an approved arsenic dip, then plaintiff cannot recover any damage by reason of the dipping of his cattle."

Appellants urge that this charge placed the burden of proof upon the defendants, rather than upon the plaintiff, to establish that the cattle were dipped in an arsenic dip, rather than in oil; but, for the reasons given in the discussion of the fourth and fifth assignments, we do not think that this objection is well taken. Under this assignment appellants further urge that:

"Carriers engaged in the transportation of live stock owe the duty to the public to receive for transportation and safely transport to destination all live stock tendered to them for transportation. Governmental regulations with reference to the prevention of diseases and the means used by the government to prevent diseases are not part of the carrier's duty; its duty to the shipper having ceased with the delivery of the live stock at the point of destination."

As a general proposition, this may be true, but in the instant case the plaintiff had pleaded a specific contract with the defendants through their local live stock agent to prepare the means of giving the arsenic dip, and had paid the company before shipment for the giving of said dip. Defendants in their answer claimed that said cattle were dipped in the arsenic dip, and in this paragraph of the court's charge instructions are given on that theory of the defense. While it is true that the government may and does assume direction and supervision over the enforcement of quarantine precautions and regulations, yet in this case the state of Oklahoma had authorized the giving of two kinds of dips for cattle shipped into the state from Texas; one of the arsenic solution, and the other of crude petroleum. The plaintiff desired his cattle to be subjected to the arsenic dip, and so informed defendants through the live stock agent, and was promised that provisions would be made by the cleaning out of the pens and vats at Vinita for the giving of the arsenic dip, and therefore the defendants could not avoid the responsibility entailed by such agreement merely because a government officer supervised the giving

of this treatment to the cattle required by governmental regulations. In fact, the evidence justifies the finding by this court that the trouble was that the defendant companies failed to properly remove from the vats the crude petroleum before allowing the arsenic solution to be emptied into them, and that this sediment of oil rose to the surface and some of the cattle, at least, were in effect subjected to the oil dip, while others, after the oil had been carried away by previous cattle, did not receive the full effects from such floating oil. We do not believe that any error is shown in this assignment, and the same is overruled, and likewise the seventh, which raises the same question.

In the eighth assignment appellants complain that the court erred in giving the sixth and seventh paragraphs of the main charge, and also defendants' specially requested instruction No. 3. The sixth paragraph of the court's charge is given above, and the seventh submitted the converse, to wit, that if plaintiff had requested of defendants that his cattle be given an approved arsenical dip, and the defendants agreed to do so, and that the defendants negligently dipped them or permitted them to be dipped in a different dip, and by reason thereof plaintiff's cattle were damaged, then the jury were instructed to find for the plaintiff the difference, if any, in the market value of cattle at Vinita just after they were dipped and what would have been their market value at the same time and place if dipped in an approved arsenical dip. As before stated, we believe that this was properly an issue to be submitted to the jury as to whether or not Mr. Comer for the defendants had promised to have prepared for plaintiff's cattle this arsenic dip and to dip them therein, and whether or not the defendants had failed to carry out this agreement. If such be the case, defendants could not be relieved of the responsibility for the fulfillment of the obligation merely because a governmental officer supervised the dipping of said cattle. There is nothing in the record that raises the presumption that this inspector arrogated to himself the authority to say whether one or the other of the approved treatments should be applied to any specific shipment of cattle, but merely whether one or the other should be used, that it should be used in compliance with the law. In this view of the case, it seems to us that defendants' special instruction No. 3 was an instruction to which they were not entitled, and therefore they cannot reasonably complain that it was in conflict with paragraphs 6 and 7 of the court's charge and misleading and confusing to the jury. If there be any error, the defendants have received the benefit thereof, and show no injury. Therefore the eighth assignment is overruled.

In their ninth assignment appellants complain that the verdict of the jury is excessive, in that, by reason of the contention that the plaintiffs would not be entitled to recover for any injuries sustained on account of the dip used, and because the plaintiff himself testified that, in so far as the damages arising from delays in transportation were concerned, they amounted to only 50 cents a head, or a total of $180.50, and one dead, $36, and that inasmuch as the recovery was for $667.50, that the judgment is excessive to the amount of $451; but this court cannot agree with appellant's premise that the plaintiff would not, under the pleadings and evidence, be entitled to damages on account of the dip used, and hence does not concur in the conclusion reached, and therefore the ninth assignment is overruled.

Finding no reversible error, the judgment of the trial court is hereby affirmed.