**GALVESTON, H. & S. A. RY. CO. v. HARTFORD FIRE INS. CO.  (No. 1044.)**

(Court of Civil Appeals of Texas. El Paso. March 11, 1920. On Motion for Rehearing, April 15, 1920.)

1. Pleading ⟜228—Error to sustain exception to plea in abatement where facts did not appear.

Where the truth of matters contained in a plea in abatement did not appear from the face of the record so as to enable the court to decide the questions raised as a matter of law, it was error to sustain exceptions to the plea.

2. Appeal and error ⟜1040(6)—Sustaining exceptions to plea in abatement harmless, in view of subsequent evidence.

Error of the court in sustaining without record showing facts exceptions to a plea in abatement for want of capacity to sue was harmless, where the necessary matters were subsequently introduced in evidence, showing that the plaintiff was entitled to prosecute the action.

3. Insurance ⟜36—Corporation had authority to insure against hazards of transportation.

A charter of an insurance company, authorizing it to "grant insurance against loss or damage which may be caused to all kinds of property by the elements, * * * including fire, * * * and against the hazards of inland navigation and transportation," authorized the company to insure shippers of live stock against the hazards of transportation with the agreement that upon the payment of losses, the shippers would assign their cause of action to insurer, which should be subrogated to all their rights in the premises.

4. Insurance ⟜24—Business done by foreign corporation prior to issuance of certificate cannot be validated.

Business done by a foreign insurance corporation prior to the issuance of a certificate of authority, required by Vernon's Sayles' Ann. Civ. St. 1914, art. 4761, cannot be validated by subsequent issuance of a certificate.

5. Insurance ⟜26—Assignment to insurer of cause of action prior to certificate of authority invalid.

Where an insurance company entered into contracts insuring shippers of live stock against loss arising from damage to stock in transportation prior to issuance to the insurer of a certificate of authority, required by Vernon's Sayles' Ann. Civ. St. 1914, art. 4761, and loss resulted in the shipments by reason of negligence of the carrier, and under the conditions of the policy the insurer paid the amount of the losses to the shippers and took an assignment of their claims against the carriers, it cannot maintain an action against the carriers on such claims, in view of articles 4900, 4972; the courts not lending their support to a claim founded upon the violation of express law.

On Motion for Rehearing.

6. Courts ⟜104—Appellate court required to specifically pass on each assignment.

The statute requires the Court of Civil Appeals to specifically pass upon each assignment of error.

7. Appeal and error ⟜499(3)—Record must show motion to suppress deposition was seasonably made.

A complaint of the refusal of the trial court to suppress the deposition of a witness because he failed to answer certain cross-interrogatories propounded will not be considered, where the record fails to show that the motion was seasonably made.

8. Depositions ⟜83(3) — Not suppressed for failure of witness to answer cross-interrogatories.

Court properly refused to suppress a deposition on the ground that the witness had failed to answer certain cross-interrogatories, where the answers given show that he answered fully and freely all questions about which he had first knowledge.

9. Depositions ⟜83(2)—Suppression for failure to answer cross-interrogatories discretionary.

A motion to suppress a deposition on the ground that the witness failed to answer cross-interrogatories propounded is a matter addressed to the discretion of the trial court.

10. Carriers ⟜228(3) — Assignee of claim properly permitted under the pleadings to show amount paid assignor.

In an action by an assignee of a claim against a carrier for injuries to live stock in transportation, the court properly permitted a witness for plaintiff to testify as to the number of cattle paid for out of each shipment by the assignee, who insured the shipper against loss and the amount paid, where the carrier especially pleaded that it should not be held liable for more than the assignee paid the shipper.

11. Appeal and error ⟜690(1)—Contents of alleged erroneous documentary evidence offered must be shown to have been known to the jury.

In an action against a carrier for injuries to live stock, it cannot be said that it was error to offer expense bills in evidence, where the bill of exceptions does not show that the contents of such papers were ever known to the jury.

12. Appeal and error ⟜1050(1)—Improper evidence must be shown to have influenced jury.

In an action against a carrier for injuries to live stock, if it was error to introduce in evidence expense bills, reversal will not be granted in the absence of a showing that the jury were in any way influenced thereby.

13. Appeal and error ⟜1051(1)—Improper admission of evidence, otherwise proven harmless.

Admission in evidence of expense bills, if error, was harmless, where the facts were proven by other evidence.

**14. Carriers ☞216 — Liable for rough handling of poor and weak live stock.**

A recovery cannot be had from a carrier for injuries to live stock, which were the proximate result of weakness at the time the stock were tendered for carriage, yet the carrier after receiving them is in duty bound to exercise ordinary care and to transport them with reasonable dispatch, and, if guilty of negligence or unreasonable delay, which proximately results in injury, it is liable, though the results were more disastrous than if the cattle had been in good condition.

**15. Appeal and error ☞1057(1) — Improper exclusion of evidence otherwise established harmless.**

In an action by a carrier for injuries to live stock, exclusion of opinion evidence that the live stock was too weak for shipment was harmless, where there was other abundant evidence that the live stock was very poor and weak.

**16. Witnesses ☞248(2)—Answer to question held responsive.**

The answer, "The cattle that got through alive were particularly broken up and injured, and I suppose depreciated in value more than they would have been had there been no unusual delays or rough treatment of the cattle while they were in transit," was fairly responsive to a question as to what the cattle would have been worth at their destination if they had not died in transit, and had reached their destination in good condition, and without any unusual delays or rough treatment.

**17. Appeal and error ☞971(2)—Whether witness qualified to give opinion a matter within discretion of court.**

Whether or not a witness is in fact qualified to testify and give his opinion is a matter for the trial court in its discretion, and will not be reviewed except upon showing of gross abuse.

**18. Evidence ☞474(20)—Person accompanying stock may express opinion as to damage by rough treatment and delay.**

A witness who accompanied a shipment of cattle and remained with them after they reached their destination, and saw them get fat and resold, was qualified to give his opinion as to the damage caused by rough treatment and delays while in the hands of the carrier.

**19. Evidence ☞471(35)—Testimony held competent as tending to establish true measure of damages for injuries to stock in transit.**

A witness, testifying that rough handling of live stock by a carrier "depreciated the entire shipment I should say, from $1.50 to $3 per head. I say this because I remained with the cattle after they reached their destination and saw them get fat and resold, and know from the way they recuperated there they were damaged to the extent I have stated. I make this statement knowing that cattle shipped the distance from Marathon to Blackland would depreciate to some extent in condition with ordinary and usual handling, but the amounts of depreciation I have stated are in excess of what the depreciation would be if they had been handled in the ordinary and usual manner, without delays or rough treatment"—stated facts and an opinion tending to establish a true measure of damages, and did not involve a question of law.

**20. Evidence ☞471(35)—Opinion testimony held to relate to facts and not law.**

Opinions of witnesses to the effect "that cattle of the class in question going from this section of the country at that time of the year to pasture in Oklahoma should not, in their opinion, lose over a certain per cent., assuming that the cattle were handled in the ordinary and usual way," when given by qualified witnesses, presented purely a question of fact and in no way involved a question of law.

Appeal from District Court, Brewster County; Joseph Jones, Judge.

Action by the Hartford Fire Insurance Company against the Galveston, Harrisburg & San Antonio Railway Company. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Baker, Botts, Parker & Garwood, of Houston, W. Van Sickle, of Alpine, and W. B. Teagarden, of San Antonio, for appellant.

P. A. Wells, of Chicago, Ill., J. F. Sutton, of Alpine, and J. A. Templeton, of Ft. Worth, for appellee.

### Statement of the Case.

HARPER, C. J.   Russell and Borrum, owners of certain cattle situate in Brewster and Terrell counties, Tex., shipped them over appellant's and its connecting lines of railway to points in Oklahoma. Appellee insurance company insured them to said owners against the hazards of transportation, with the agreement that upon the payment to them of the losses for which plaintiff became liable under the terms of its policies the said owners' claims against the carriers should be transferred to and assigned to appellee, and that it should be subrogated to all their rights in the premises. Losses were sustained. Appellee paid said losses, and the owners transferred their claims against the carriers to appellee in accordance with their contract. This action was brought by the insurance company against the initial carrier alone to recover the damages growing out of the shipment.

Defendant answered first by plea in abatement: (a) That the appellee is a foreign corporation chartered under the laws of Connecticut, and it has no power under its charter to make such contracts as form the basis of this suit; (b) no permit to do business in this state under its laws; (c) and no authority to prosecute its suit.

"Appellant also pleaded specially that each shipment of cattle was carried under a written contract exempting appellant and each carrier

from all liability except for negligence of the carriers and their employés, and for all damage due to the inherent vices or weakness of the cattle or the improper mixing, crowding, or overloading of the cattle, and it was alleged that caretakers accompanied each shipment of cattle under the contracts, in which they were bound to look after and care for the cattle in transit. It was also alleged, in substance, that the cattle were too poor and weak to withstand the shipment, and it was negligence to ship them in the first instance, and plaintiff assumed the risk of the loss and damage. Also that they were improperly loaded, overloaded, and mixed in the cars, and because of their poverty and weakness and viciousness they injured themselves and one another, and got down and were trampled on, and the caretakers neglected to properly look after them and keep them, as was their' duty to do, and it was expressly alleged that the loss and damage was all due to the inherent vices and poverty of the cattle and the negligent manner in which they were mixed in loading, and to the negligence of the caretakers during transportation, and to the negligence of the shippers in shipping cattle in such condition, in the first instance, or the said negligence of the shippers and caretakers at least contributed to the loss and damage. All of which defenses were set out at length and in detail in the answer, concluding with a brief review of same."

Appellee filed exceptions to the plea in abatement, and they were by the court sustained. Tried to jury, and resulted in a verdict and judgment for appellee for $10,257, from which appeal is perfected.

## Opinion.

By the first two assignments and propositions appellant raises the following questions, based upon its plea in abatement:

"(a) Appellee had no power or authority under its charter to make contracts such as form the basis of this suit.

"(b) That it had no power or authority from any source to acquire and prosecute such causes of action as it has asserted in this suit.

"(c) That it had no power or authority under its permit to do business in Texas to make contracts such as form the basis of this suit, or to acquire and prosecute claims such as are sued on in this case.

"(d) That it had no authority under the law of this state to make contracts such as form the basis of this suit, and no authority to acquire and prosecute such causes of action as it asserts in this case."

First proposition is, stated in our own words:

[1] Since the truth of the matters contained in the plea in abatement did not appear upon the face of the record so as to enable the court to decide the questions raised as a matter of law, it was error to sustain the exceptions to the plea.

[2] The charter of plaintiff and its permit to do and carry on business in Texas having been introduced in evidence the action of the court in sustaining the exceptions to the plea prior to the introduction of the evidence was immaterial. Barrett v. Featherstone, 89 Tex. 567, 35 S. W. 11, 36 S. W. 245; J. L. Collins Piano Co. v. Adams, 216 S. W. 420.

If the evidence adduced upon the issues raised establish plaintiff's powers under its charter to make the contracts which form the basis of this suit, and that it had such a permit from the state of Texas to make the contracts by and through which it acquired the claims, or that the claim could be lawfully acquired and prosecuted in this state without permit, then it would follow that there was no error in sustaining the exceptions to the plea.

[3] The foundation of this action lies within these questions: As to plaintiff's charter powers, the evidence discloses that it is a foreign insurance corporation organized and chartered under and by virtue of the laws of the state of Connecticut, and its charter provides:

"That the Hartford Fire Insurance Company * * * is authorized to grant insurance against loss or damage which may be caused to all kinds of property by the elements, etc., * * * including fire, * * * and against the hazards of inland navigation and transportation."

This suffices to authorize the company to write the insurance, as well as to acquire from the assured by the law of subrogation or by contract of purchase their claim against the carriers of the stock, and to prosecute the suit to recover against the carrier in the name of the assured or in its own name, unless prohibited from so doing by some statute or rule of law of this state. Hall et al. v. Chattanooga Ry. Co., 80 U. S. (13 Wall.) 367, 20 L. Ed. 594; St. Louis, I. M. & So. Ry. Co. v. Commercial Ins. Co., 139 U. S. 223, 11 Sup. Ct. 554, 35 L. Ed. 154; Kangerga & Bro. v. Willard, 191 S. W. 195.

The next question is, Did the plaintiff insurance company have the required permit to do business in this state, to sue and be sued, as it is contended it did by appellee? The record shows the facts to be that the Commissioner of Insurance had issued a permit for the year ending February 28, 1917; that the next permit issued was dated June 25, 1917. The latter reads:

"This is to certify that the Hartford Fire Insurance Company of Hartford, Conn., having complied with all requirements of law relating thereto, is hereby authorized to pursue the business of fire, etc., * * * insurance within this state for the year ending February 28, 1918."

It will be noted from this statement that between the dates February 28, 1917 (being the date of expiration of the one permit), and June 25, 1917, the plaintiff had no permit to pursue its business in Texas; in other words, in March, April, and May, 1917, within which months the evidence shows the policies to have been written, the loss to occur,

the payment to the assured of the amount of the policies, and the written ·transfer of the claim executed, it had no permit unless the permit issued June 25th relates back and confers this authority by virtue of its wording "authorized to pursue the business * * * for the year ending February 28, 1918." Article 4761, Vernon's Sayles' Stat. Texas provides:

"No foreign or domestic insurance company shall transact any insurance business in this state other than the lending of money, unless it shall first procure from the commissioner of insurance and banking a certificate of authority, stating that the requirements of the laws of this state have been fully complied with by it, and authorizing it to do business in this state. Such certificate of authority shall expire on the last day of ·February in each year, and shall be renewed annually so long as the company shall continue to comply with the laws of the state, such renewals to be granted upon the same terms and considerations as the original certificate."

[4] It seems clear that there is nothing in the wording of this statute which could be construed into the meaning that any business done prior to the issuance of the certificate was or could be validated thereby. For its express provisions are that it shall not transact any other business except "lending of money, unless it shall first procure * * * a certificate of authority," etc., and the statute terminated the permit February 28, 1918, no matter when written.

But it is urged by appellee that the fact that it did not have the certificate required by this statute to transact the business of insurance companies, at the time it issued the policy and acquired the assured's claim for damages, nevertheless it is not precluded thereby from maintaining this action, .for the reason that there is no inhibition in the statutes applicable to foreign insurance companies against its maintaining a suit upon any cause of action as proposed by appellant. Appellant's proposition being that appellee or plaintiff below, being a foreign corporation without authority to do any business in this state, it was not entitled to bring this suit, citing Rev. Civ. Stat. Vernon's Sayles' arts. 4900, 4960, and 4964. Delaware Insurance Co. v. Security Co., 54 S. W. 916; Taber v. Association, 91 Tex. 94, 40 S. W. 954, etc.

The articles of the statute referred to are incorporated in title 71, chapters 9 and 15, and apply to insurance companies, but in no way prohibit the maintenance of a suit, but simply fix a penalty for pursuing the business of insurance companies without first obtaining permit. Article 4972, title 71, provides that the provisions of this title are conditions upon which foreign insurance companies shall be permitted to do business within the state.

The decisions cited apply only to foreign corporations other than insurance companies. As to such, article 1314, tit. 25, c. 26, R! S., provides that they shall obtain a permit to transact business in the state, and article 1318, same title and chapter, provides that such corporations shall not maintain a suit * * * upon any demand * * * in the absence of complying with said statute, but article 1319, of the same title and chapter, provides that the provisions of this chapter shall not apply to insurance companies, so neither the statutes nor the decisions cited sustain the contention of appellant.

[5] The twenty-fifth assignment urges that the court erred in refusing to give the peremptory instruction for defendant. The proposition is that—

"Appellant was entitled to an instructed verdict because it appears from the certified copy of appellee's charter and permit to do business in Texas that as a matter of law it had no power or authority to make the contract of insurance in question or to acquire the claim sued on in Texas. The said insurance contracts and claims were made and acquired in violation of the civil and penal statutes of this state, and they are ultra vires and void, and ought not to be enforced against appellant."

This proposition is well taken. As noted above at the time the insurance was written which was the basis for the acquisition of the claims sued upon, the appellee had no permit to do business of any kind in this state other than lending money, and by its acts of so writing this insurance and through such insurance contracts acquiring the claims sued upon without first obtaining such permit it violated the provisions of article 4761, above quoted, articles 4900, 4972, Rev. Civ. Statutes, of this state, and was subject to the penalty therein prescribed. The courts will not lend their support to a claim founded upon the violation of express law. Oscanyon v. Arms Co., 103 U. S. 261, 26 L. Ed. 539; Republic Trust Co. v. Taylor, 184 S. W. 772; Bishop v. Japhet, 171 S. W. 499.

Many other assignments of error are presented in the brief of appellant, predicated upon the admission and exclusion of evidence, erroneous charges given, and charging error in refusing to submit special charges. They have been reviewed, and we are of the opinion that they are without merit.

For the reason that the claims which form the basis of this cause of action were acquired in violation of law, the cause is reversed, and here rendered for appellant. ·

On Motion for Rehearing.

Because we overruled certain of appellant's assignments of error without assigning our reason as applied to each assignment, it

(220 S.W.)

is insisted that we should do so, that it may have the benefit thereof in presenting them to the Supreme Court upon writ of error.

We thought when the opinion was written, and think now, that this is a useless waste of time, because, as we understand the rules and holdings of the Supreme Court, it would, if writ of error was granted, pass upon all questions, unless it be one requiring a finding of fact by this court. Wilson v. Johnson, 94 Tex. 272, 60 S. W. 242.

[6] However, we have concluded that under the statute we are required to specifically pass upon each assignment of error, so we give the following reasons for overruling the appellant's other 31 assignments:

[7-9] The third complains of the refusal of the court to suppress the depositions of a witness for plaintiff because he failed to answer 24 cross-interrogatories propounded. This assignment is overruled because: (a) The record fails to show that the motion to suppress was seasonably made; (b) the answers given show that he answered fully and freely all questions about which he had first knowledge; (c) it was a matter of discretion with the trial court, and we see no abuse of discretion.

[10] The fourth, a witness, was permitted to testify over objections that so many cattle were paid for out of each shipment by the insurance company and the amount paid. Appellant specially pleaded that it. should not be held liable for more than appellee paid the shippers. This was direct evidence of the amount paid, and was limited to that purpose by the court. (b) The assignment of the claims of the shippers, what was paid and what paid for, was a necessary part of their cause of action.

[11-13] Fifth. The expense bills were offered in evidence. They were issued by the initial carrier, appellant, and contained notations of the number of cattle shipped. The number checked out at destination, the number and kind dead and missing, etc. (a) The bill of exceptions does not show that the contents of these papers were ever known to the jury; (b) and, if they were, there is no showing that they were in any way influenced thereby; (c) the facts were proven by other evidence.

The sixth, eleventh, twelfth, thirteenth, fourteenth, fifteenth, sixteenth, seventeenth, and eighteenth complain that it was error to exclude evidence, letters, and testimony offered concerning the weak and impoverished condition of the cattle before shipment, as to whether they were physically fit for shipment, etc.

[14] The answer to all of these is that there was no evidence offered by appellant to show that any losses for which recovery was had were occasioned by or due solely to the impoverished or weak condition of the cattle, but, on the other hand, the court's

220 S.W.—50

charge clearly submitted as a basis of recovery the damages to the cattle sustained by rough handling and delays, etc., and that no recovery could be had for or on account of inherent weakness. The rule applicable is that—

"A recovery cannot be had for injuries which were the proximate result of weakness at the time they were tendered for carriage, yet the carrier, having received them, were in duty bound to exercise ordinary care, and to transport them with reasonable dispatch, and if guilty of negligence or unreasonable delay which proximately resulted in injury, it is liable, though the results were more disastrous than if the cattle had been in good condition." T. & P. Ry. Co. v. Dawson, 34 Tex. Civ. App. 240, 78 S. W. 235; K. C. & M. Ry. Co. v. Weatherby, 203 S. W. 793.

By the nineteenth the point is made that it was error to permit a witness to testify that the shipment of cattle with which he traveled were in proper condition for shipment, upon the ground that he was not qualified. The evidence is sufficient to show qualification to give an opinion about the cattle which he accompanied.

[15] Another observation upon the two propositions might not be amiss in disclosing the views of the court upon the two questions, i. e., as to the admission of testimony that some of the cattle were in good condition for shipment and the exclusion of other opinion evidence offered that they were too weak for shipment. The record clearly discloses that many of the cattle were in good condition, and there is abundant evidence that many of them were very poor and weak. For instance, the shippers in effect admitted that the reason for taking out the insurance was upon this account, but the fact that the opinion of certain witnesses as to poverty and weakness were excluded could not be held reversible error in the face of the whole record, for it, to us, clearly appears that the question was fully developed upon the facts, and that the court gave a fair charge, if not a more favorable charge, in favor of defendant upon the question than was warranted.

The following interrogatories were propounded to witness Ellis:

No. 22: "If the cattle that died and were lost in transit either while they were being transported or soon thereafter had reached their destination in good condition and without any unusual delays or rough treatment in transit, what would they have been worth at their destination at the time these cattle moved? What would the crippled and injured cattle in the several shipments have been worth at destination at that time in an uninjured condition?"

Answer: "The cattle that got through alive were badly broken up and injured, and I suppose depreciated in value more than they would have been had there been no unusual delays or rough treatment of the cattle while they were in transit."

Interrogatory 23: "State, if you know, wheth-

er the cattle in these several shipments which got through alive, and which did not therefore die from their injuries, were injured and depreciated in value more than they would have been if there had been no unusual delays or rough treatment of such cattle while in transit. What is your best judgment as to this? That is, in your judgment, would such cattle depreciate in value by reason of any unusual delays or rough treatment while in transit more than they would have been if they had been handled in the usual and customary way and gone through in their usual and customary time? If you answer this question in the affirmative, then please state the extent of such depreciation, and state the facts on which your judgment with reference thereto is based."

To the twenty-third interrogatory he answers: "The cattle depreciated in value much more than they would if they had been handled in the usual and customary manner and gone through in the usual and customary time, but I do not know the extent of the depreciation in money value."

Interrogatory 24: "How long did it take these cattle to recover from the effects of the shipment?"

To the twenty-fourth interrogatory he answers: "In my opinion it would take these cattle from 50 to 60 days to recover from the effects of the shipment."

[16] Defendant filed its motion to exclude and suppress these interrogatories upon the ground that the answer to the twenty-second is a voluntary statement not called for by the question, and the witness not qualified. As to the twenty-third, in addition to the above grounds that the answer is not a proper criterion by which to measure or make proof of damages in this case, and practically the same reasons are assigned in the motion to exclude the answer to the twenty-fourth. The answers seem to be fairly responsive to the questions.

[17] The witness was placed on the stand and examined and cross-examined, and it appears from his testimony that he had had many years' experience in shipping cattle. But as to whether the witness was in fact qualified to testify was a matter for the trial court in its discretion, and will not be reviewed, except upon showing of gross abuse of this discretion. Drug Co. v. Madden Graham Co., 45 Tex. Civ. App. 74, 99 S. W. 723.

[18, 19] Ninth assignment complains of the refusal of the court to strike out the following from the answer to the twenty-third interrogatory to witness McAuley:

"To the twenty-third direct interrogatory: In my answer to the eighteenth direct interrogatory I say I did not know of any cattle that had been injured that did not die, and by this I referred to crippled animals that got down in the car and were trampled on, but did not refer to the general damages to the entire shipment because of the handling they received between San Antonio and destination. (This handling, in my opinion, depreciated the entire shipment

I should say, from $1.50 to $3 per head. I say this because I remained with the cattle after they reached their destination, and saw them get fat and resold, and know from the way they recuperated there they were damaged to the extent I have stated. I make this statement knowing that cattle shipped the distance from Marathon to Blackland would depreciate to some extent in condition with ordinary and usual handling, but the amounts of depreciation I have stated are in excess of what the depreciation would be if they had been handled in any ordinary and usual manner, without delays or rough treatment.)

"Whereupon defendant promptly objected to the reading in evidence of all that part of the answer inclosed in parentheses above, for the reason that it is but an opinion of the witness, not responsive to the question, and the testimony is not the proper method or criterion by which to prove or measure the damages in this case. It is upon a mixed question of law and fact, and is an invasion of the province of the jury for the witness to be permitted to assess the damage in a lump sum, or by per cent., or by any other method, and it is also shown by the witness that he is not qualified as an expert on the subject, and knows nothing of the market value of the animals.

"No other testimony than his own, as it appears in the statement of facts, was offered on his qualification."

It seems clear that there was no question of law involved in this answer, but was purely a question of fact, concerning which the witness shows himself to be familiar by the fact that he accompanied the cattle, and remained with them, and the facts enumerated, as well as the opinion expressed, tended to establish true measure of damages, and this is sufficient. M., K. & T. Ry. Co. v. Cauble, 174 S. W. 880; G., C. & L. F. Ry. Co. v. Jackson & Edwards, 99 Tex. 343, 89 S. W. 968.

The tenth assignment complains of the failure of the court to strike out a similar answer to an interrogatory upon approximately the same grounds as indicated next above, and is overruled for the same reason.

[20] Assignments 20 and 21 complain of the refusal of the court to exclude the opinions of two witnesses to the effect that—

"Cattle of the class in question, going from this section of the country at that time of the year to pasture in Oklahoma, should not, in their opinion, lose over a certain per cent., assuming that the cattle are handled in the ordinary and usual way, where there is no rough handling or unusual delays, or, in other words, given good handling."

This was purely a question of fact, about which the witnesses were shown to be qualified to express an opinion, and in no way involves a question of law. True Bros. v. St. L. & B. M. Ry. Co., 143 S. W. 298.

The twenty-second charges error in permitting witness, over objection, to express his opinion as to the increase in value of

the cattle between the point of shipment and destination. This was simply an opinion that the value was greater at destination than at point of shipment, and witness had shown himself qualified to express such an opinion, and the record does not disclose that appellant made any effort to discredit his qualification to do so, so it was not error to admit the testimony. T. & P. Ry. Co. v. De Long et al., 176 S. W. 874.

The twenty-third and twenty-fourth, twenty-sixth, and twenty-seventh assert that for various reasons the court should have instructed a verdict for defendant; for instance, it is asserted that there is: (a) No competent evidence upon which to base a finding of damages or the amount; (b) that the uncontroverted evidence establishes as a matter of law that all the injury resulted from poverty, weakness, and inherent vices of the cattle, etc. To these propositions we cannot give our assent.

The twenty-eighth, twenty-ninth, thirtieth, thirty-first, thirty-second, and thirty-third complain of the charge of the court. In this we find no error. To answer all the propositions under these assignments would take too much time and space, and we fail to see how doing so would assist either appellant in applying for, or the Supreme Court in passing upon, an application for writ of error.

The judgment is not excessive.